# UNITED STATES v. REDGRAVE.

## APPEAL FROM THE COURT OF CLAIMS.

Submitted January 6, 1886.—Decided January 25, 1886.

Cadet-engineers who had finished their four years' course at the Naval Academy, had passed their final academic examinations, and had received their diplomas before the passage of the act of August 5, 1882, 22 Stat. 284, became graduates, and were not made naval cadets by that act.

The provision in the act of August 5, 1882, 22 Stat. 284, for the discharge of surplus naval cadet graduates was prospective only, and did not apply to the classes of 1881, and 1882.

The facts of the case brought here by this appeal, as found by the Court of Claims, were in substance as follows:

In 1877 the appellee, who was the claimant below, entered the Naval Academy as a cadet-engineer, and on June 10, 1881, received a certificate signed by its officers that he had completed the prescribed course of study at the academy and had successfully passed the required examination before the academic board. He was on the same date detached from the academy and ordered to report for duty on board the U. S. practice steamer Mayflower. On August 30, 1881, he was detached from the Mayflower and ordered to proceed home on waiting orders. On October 28, 1881, he was ordered to proceed to the navy-yard at League Island for duty on board the United States Steamship Essex. On April 16, 1883, he reported to the superintendent of the Naval Academy, in pursuance of orders, for examination, which assumed that the act of Congress of August 5, 1882, operated upon him as a naval-cadet, requiring a six years' course before graduation, and a final examination at its conclusion. On June 23, 1883, he was detached from the Naval Academy on waiting orders. On June 26, 1883, the Secretary of the Navy addressed to him a letter, in which it was recited that he had successfully completed his six years' course at the Naval Academy, and had received a certificate of graduation by the academic board, but " not being required to fill any vacancy in the naval service happening

during the year preceding your graduation, you are hereby, honorably discharged from the 30th of June, 1883, with one year's sea-pay, as prescribed by law for cadet-midshipmen, in accordance with the provisions of the act of Congress approved August 5, 1882."

From August 5, 1882, to June 30, 1883, the claimant was paid $769.86 for service in the Navy during that period. If paid during the same period as a graduated cadet-engineer he would have been entitled to receive $796.71.

Since then the claimant has received no pay and has been held by the Navy Department and the accounting officers of the Treasury to be out of the naval service.

After leaving the Academy, the claimant and all his classmates were classified on the official Navy Register, issued in July, 1881, as having "graduated;" and up to August 5, 1882, they were regularly paid as such at the rates prescribed by section 1556 of the Revised Statutes, viz.: $1000 at sea, $800 on shore duty, and $600 on leave or waiting orders. In the same manner the cadet-engineers who completed their four years' course in 1878, 1879, and 1880 were all regularly classified in the succeeding Navy Registers as having graduated in those years respectively; and prior to August 5, 1882, they were all uniformly paid as such.

The regulations prescribing the qualifications for appointment of cadet-engineers fixed a higher average age by two years for cadet-engineers entering the Academy than was required by law for cadet-midshipmen so entering. After completing the four years' course, cadet-engineers were permanently detached from the Academy, and were never required to return to that institution. They remained in active service at sea, or upon other duty, two or three years, or longer, until vacancies occurred in the grade of assistant engineer, when they were ordered singly or in groups for examination for promotion, under the provisions of section 1392 of the Revised Statutes, before a board of engineer officers, which held its sessions at Philadelphia.

The last two years of the academic course of cadet-midshipmen were spent "at sea in other than practice ships." After

four years at the Academy they were temporarily detached from that institution by orders from the Navy Department, and were sent to sea singly or in squads. On shipboard they performed such active duties as were assigned to them. At the end of the two years, they were required to return and did return to the Naval Academy, where they were subjected to a "final graduating examination" before the academic board. If successful at such examination, they received appointments as midshipmen, and were thereafter classified in the Navy Register as having "graduated" at that date, and they were never so designated either in the Navy Register or elsewhere until after they had passed such examination at the end of the six years' course.

The provisions of the act of August 5, 1882, being the naval appropriation act, 22 Stat. 284, ch. 391, which apply to the case, are as follows:

"For the pay of the Navy, for the active list, namely: . . . Sixty-nine chief engineers, one hundred past assistant engineers, thirty-five assistant engineers, seventy-three cadet-engineers (graduates), . . . one hundred and two cadet-engineers, one hundred and thirty cadet-midshipmen (not graduates); in all four million forty-eight thousand three hundred dollars: *Provided*, That hereafter there shall be no appointments of cadet-midshipmen or cadet-engineers at the Naval Academy, but in lieu thereof naval cadets shall be appointed from each Congressional district and at large, as now provided by law for cadet-midshipmen, and all the undergraduates at the Naval Academy shall hereafter be designated and called 'naval cadets.' And from those who successfully complete the six years' course, appointments shall hereafter be made, as it is necessary to fill vacancies in the lower grades of the line, and Engineer Corps of the Navy and of the Marine Corps: *And provided further*, That no greater number of appointments into these grades shall be made each year than shall equal the number of vacancies which has occurred in the same grades during the preceding year; such appointments to be made from the graduates of the year, at the conclusion of their six years' course in the order of merit, as determined by the

academic board of the Naval Academy, the assignment to the various corps to be made by the Secretary of the Navy, upon the recommendation of the academic board. But nothing herein contained shall reduce the number of appointments from such graduates below ten in each year, nor deprive of such appointment any graduate who may complete the six years' course during the year eighteen hundred and eighty-two. And if there be a surplus of graduates, those who do not receive such appointment shall be given a certificate of graduation, an honorable discharge, and one year's sea-pay, as now provided by law for cadet-midshipmen. . . .

" That the pay of naval cadets shall be that now allowed by law to cadet-midshipmen, and as much of the money hereby appropriated as may be necessary during the fiscal year ending June thirtieth, eighteen hundred and eighty-three, shall be expended for that purpose. . . .

" That no officer now in the service shall be reduced in rank or deprived of his commission by reason of any provision of this act reducing the number of officers in the several staff corps : *Provided*, That no further appointments of cadet-engineers shall be made by the Secretary of the Navy under section three of the act of eighteen hundred and seventy-four."

The Court of Claims, following its previous decision in the case of *Leopold* v. *United States*, 18 C. Cl. 546, affirmed the following propositions of law :

"1st. Cadet-engineers who had finished their four years' course at the Naval Academy, passed their final academic examinations, and received their diplomas before the passage of the act of August 5, 1882, 22 Stat. 284, became graduates, and are not made naval cadets by that act. They are therefore entitled to pay provided by the Revised Statutes, section 1556, page 268. 2d. The provision in the act of August 5, 1882, for the discharge of surplus naval cadet graduates is prospective only, and does not apply to the classes of 1881 and 1882." 20 C. Cl. 226.

Judgment was accordingly rendered in favor of the claimant, from which this appeal was prosecuted by the United States.

Mr. *Assistant Attorney-General Maury* for appellant.

Mr. *J. W. Douglass* for appellee.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

In order to understand the operation of the act of August 5, 1882, upon the status of cadet-engineers, at the time it took effect, it will be necessary to consider what that was, according to laws then in force. That class or grade in the naval service owes its origin to provisions of law, now contained in the Revised Statutes, as follows :

"SEC. 1522. The Secretary of the Navy is authorized to make provision, by regulations issued by him, for educating at the Naval Academy, as naval-constructors or steam-engineers, such midshipmen, and others, as may show a peculiar aptitude therefor. He may, for this purpose, form a separate class at the Academy, to be styled cadet-engineers, or otherwise afford to such persons all proper facilities for such a scientific mechanical education as will fit them for said professions.

"SEC. 1523. Cadet-engineers shall be appointed by the Secretary of the Navy. They shall not at any time exceed fifty in number, [Reduced to twenty-five by the act of June 22, 1874, § 3, 18 Stat. 191, Sup. Rev. Stat. 83,] and no person, other than midshipmen, shall be eligible for appointment unless they shall first produce satisfactory evidence of mechanical skill and proficiency, and shall have passed an examination as to their mental and physical qualifications.

"SEC. 1524. The course for cadet-engineers shall be four years, including two years of service on naval steamers. [By the act of February 24, 1874, 18 Stat. 17, Sup. Rev. Stat. 6, this provision was changed so as to require the course of instruction at the Naval Academy for cadet-engineers to be four years instead of two, but not dispensing with the additional two years' service on naval steamers.]

"SEC. 1525. Cadet-engineers shall be examined from time to time, according to regulations prescribed by the Secretary of the Navy, and if found deficient at any examination, or if dismissed for misconduct, they shall not be continued in the Academy or

in the service except upon the recommendation of the academic board."

By § 1394 Rev. Stat. it was provided, that "cadet-engineers who are graduated with credit in the scientific and mechanical class of the Naval Academy may, upon the recommendation of the academic board, be appointed by the President, and confirmed by the Senate, as second assistant engineers;" but by § 1392 no person could be so appointed until after he had been found qualified by a board of competent engineers and medical officers designated by the Secretary of the Navy. By § 1556 Rev. Stat. the pay of cadet-engineers was, "before final academic examination, five hundred dollars; after final academic examination and until warranted as assistant engineers, when on duty at sea, one thousand dollars; on shore duty, eight hundred dollars; on leave or waiting orders, six hundred dollars."

At the same time the students at the Naval Academy styled cadet-midshipmen were required to take an academic course of six years, § 1520 Rev. Stat., when, having passed successfully the graduating examination at the Academy, they were entitled to receive appointments as midshipmen. § 1521 Rev. Stat. The pay of cadet-midshipmen was five hundred dollars; for midshipmen, after graduation, when at sea, one thousand dollars; on shore duty, eight hundred dollars; on leave or waiting orders, six hundred dollars. § 1556. Rev. Stat. By the act of March 3, 1877, 19 Stat. 390, Sup. Rev. Stat. 294, cadet-midshipmen, "during such period of their course of instruction as they shall be at sea in other than practice ships, are entitled to receive, as annual pay, nine hundred and fifty dollars."

It is contended on the part of the Government, in opposition to the conclusions of the Court of Claims, that the act of August 5, 1882, when it took effect converted all cadet-engineers who had not completed their six years' course during that year into naval cadets, all other cadet-engineers being regarded as graduates; and that those who were not at that time graduates in that sense were subject to the provisions of the act in regard to pay and discharge.

.The controversy would seem to turn on the meaning to be given to the word "graduates" as used in this act of Congress. · It is certain that the act divides all who, at the date when it took effect, were known as cadet-engineers, into two classes— graduates and not graduates. Prior to that date a cadet-engineer might be pursuing the four years' course of study at the Academy, or the two additional years of service on board a naval steamer, or, having successfully passed both periods, might be waiting promotion to the grade of assistant engineer.

It is found as a fact by the Court of Claims that, before the passage of the act, cadet-engineers who had successfully passed their examination at the end of the four years' course of study at the Academy, were called and considered graduates. The seventy-three cadet-engineers, styled graduates, for whose pay the act of August 5, 1882, makes appropriation, include all of that description, and, among them, the appellee in this case, while the one hundred and two cadet-engineers, styled in the same act "not graduates," are those who at that date were still at the Academy pursuing their four years' course. This classification was followed by the Navy·Department in the Navy Register. The Naval Appropriation Act of March 3, 1883, 22 Stat. 472, ch. 97, provides for the pay of sixty-two cadet-engineers, which it is not denied is the exact number of cadet-engineers who had graduated at the Academy, but were not yet eligible to promotion, or whose promotion had been delayed, and includes the classes who completed their four years' course in 1880, 1881, and 1882. The same act appropriates for the pay of three hundred and thirty-five naval cadets, being presumably the whole number of the "under-graduates" referred to in the act of August 5, 1882.

This would seem to settle the meaning of the words, according to the sense adjudged by the Court of Claims, unless some other meaning is required to be attached to them by other and controlling provisions of the same act. It is argued by the Assistant Attorney-General that a consistent reading of the entire context does in fact require such other meaning to be given to the words "graduates" and "not graduates."

In support of this conclusion our attention is called to the

provisos of the act, whereby it is enacted that appointments to fill vacancies in the lower grades of the line and the engineer corps, and of the marine corps, shall be thereafter made only from those who successfully complete a six years' course as naval cadets; that no appointments into these grades shall be made each year, except to fill vacancies therein which occurred during the preceding year; that such appointments are to be made only from the graduates of the year at the conclusion of their six years' course; that the exception made, that a graduate who completed his six years' course during the year 1882 shall not be deprived of his appointment, carries with it the implication that those who had not completed a six years' course at that time were included in the rule of exclusion; and that the surplus of graduates, not receiving such appointment, are therefore subject to discharge from the service, on graduation, with one year's sea-pay, in the language of the act "as now provided by law for cadet-midshipmen." No similar provision of law then in force relating to cadet-midshipmen however appears, and the reference is without application. Such a provision did exist in reference to the appointment of graduates of the Military Academy as second lieutenants of the Army, and the discharge of supernumeraries after July 1, 1882, by virtue of § 3 of the act making appropriations for the support of the Military Academy, approved June 11, 1878, 20 Stat. 108, Sup. Rev. Stat. 346, but no such legislation in regard to cadet-midshipmen is to be found in force at the date of the act of August 5, 1882. This, however, is not important, as nothing depends on the accuracy of this reference.

The general purpose of this act is quite apparent. One main object was to abolish the distinctions previously made by law between cadet-engineers and cadet-midshipmen, and for the future to merge both classes in the new designation of naval cadets. The previous differences between them grew out of separate provisions as to their number, their manner of appointment, their course and term of study, and their pay after their four years' course at the Academy. Another principal purpose of the act was to prevent the increase of the number of officers in the navy, by providing for the annual discharge from the

service of all graduates of the year not needed to fill vacancies, in the grade to which they were eligible for promotion, actually existing at the time of their graduation. But this was to be accomplished consistently with the declaration of the act, "that no officer now in the service shall be reduced in rank or deprived of his commission by reason of any provision of this act reducing the number of officers in the several staff corps." And to this end the whole scheme of reform embodied in the legislation was made prospective. Its express language is, that no appointments of cadet-midshipmen or cadet-engineers shall be made hereafter; that all the under-graduates at the Naval Academy shall hereafter be designated and called "naval cadets;" that from those, that is those now called naval cadets, who successfully complete their six years' course, appointments shall hereafter be made as it is necessary to fill vacancies in the lower grades of the line, and engineer corps of the Navy and of the marine corps. But none of these provisions touch the case of the cadet-engineer who has already graduated, at the date of the act, that is, who had at that time successfully completed his four years' course of study at the Academy and was serving on board a naval steamer. And the further provisions limiting the number of appointments to the number of vacancies occurring during the preceding year, and providing for the discharge of the surplus graduates, equally refer to those who become graduates after the year 1882, under this act, which now requires for graduation a full course of six years for all naval cadets, including the two years of service on board a naval steamer, which before had constituted the service of a cadet-engineer after graduation. This leaves the state and condition of cadet-engineers, who at the date of the passage of the act were already graduates according to the law as it then stood, unchanged, and to this class the appellee belonged. He is therefore entitled to the pay claimed and withheld, and the judgment of the Court of Claims in his favor is therefore

*Affirmed.*