Weldon, J.,
delivered the opinion of the court:
This case is prosecuted to recover compensation alleged to be due the claimant as a cadet-midshipman and ensign from the 30th of June, 1883, to the 1st day of January, 1887. The aggregate of his compensation during that period, as he alleges, is $2,605.49. From that amount he deducts the sum of $950, leaving a balance due of $1,655.47, and for that sum he prosecutes this suit.
*137 The petitionerenteredtheNaval Academyin September, 1877, pursued a course of study for four years, passed a successful examination, and at the end of said period received from the Academic Board a certificate as follows:
“This certifies that Cadet-Midshipman Eugene M. Harmon has completed the prescribed course of study at the United States Naval Academy, and has successfully passed the required examination before the Academic Board, preparatory to the two years’ course afloat.”
“June 10th, 1881.”
On the 2d of June, 1881, he was detached from the Naval Academy, and on the 25th of August was ordered to sea. On the 10th of March, 1883, he was detached from the United States flag-ship, ordered to proceed to Annapolis, and report to the Superintendent of the Naval Academy for examination. In pursuance to said order, he was examined on the 15th of June, 1883, and received the following certificate:
“We, the Academic Board of the U. S. Naval Academy, having thoroughly examined Naval-Cadet Eugene M. Harmon on all the subjects, theoretical and- practical, taught at this institution, and having found him proficient in each, do hereby, in conformity with the law, grant to him this certificate of graduation.
“June 15,1883.”
On the 23d of said month an order was issued detaching claimant from the Naval Academy, directing him to await orders; and on the 26th of June following the Secretary of the Navy, after reciting his graduation, aud there being no vacancy in the service, discharged him with one year’s sea pay from the 30th of June, under the provisions of the act approved August 5, 1882.
It is insisted on the part of the plaintiff', that the act of the Secretary :of the Navy discharging him on the 26th of June was unauthorized by the act of the 5th of August, 1882, the plaintiff not being an under-graduate within the meaning of said act, and said act not applying to the class of 1881 and 1882. In support of this theory of the law, our attention is called to the cases of Leopold v. United States, 18 C. Cls. R., 546; Redgrave v. Same, 116 U. S. R., 474; Perkins v. Same, id., 483.
It is also insisted that at the time of the passage of said act the claimant, by virtue of his course at the Academy and graduation, under the existing law, had vested rights which could *138 nob be affected by the repeal of a statute under which they were acquired j and there can be no repeal by implication. As a defense to the claim, it is urged by the attorney for the Government that said statute fully authorized the Secretary to make the order of the 26bh of June, and that the claimant had no rights at the time of its passage, which were nob subject to the jurisdiction and control of Congress. As this case is presented, it. is material for us to determine at what period the claimant completed his course as a cadet-midshipman; because upon that determination depends the question -whether the issue is disposed of by the reasoning in the adjudications of this and the Supreme Court. In the cases cited the question was not that of a cadet-midshipman, but a cadet-engineer. It was held in the Leopold Case by this court, that a cadet-engineer graduated at the Naval Academy in four years; that the two years at sea are not years of study, but of service; and the subsequent case of Redgrave, which was affirmed by the Supreme Court, adopted that theory of the law in the construction of the act of August 5,1882.
Cadet-engineers are not undergraduates when they are performing the service incident to the two years following their study at the Academy, but are then in the discharge of the duties incident to a period between graduation and promotion. They are to be examined at the end of six years, which included their four years at the Academy and two years on the sea, in order to determine the question of promotion. The right of a midshipman as affected by the act of August o, 18S2, and the incident-act of the Secretary of the Navy under said act is an original question in this court, being unaffected by the former decisions, except in so far as by analogy they become authority as judicial reason. The statute enacts, in the second lire viso—
“But nothing herein contained shall reduce the number of appointments from such graduates below ten in each year, nor deprive of such appointment any graduate who may comi>lete the six years’ course during the year 1882.”
Involved in this proviso are two distinct thoughts, which in our judgment become important in the construction of the act as affecting the issue in this proceeding. First, the statute does not apply to “ the class of 18S2,” and, second, as composing that class, all graduates “who may so far complete the six years’course” during said year. An exception was made in *139 favor of the class of 1883, but there the exception stopped, leaving all subsequent classes subject to the provisions of the statute. This and the Supreme Court have decided that the statute was prospective only, and did not apply to any class except those graduating subsequent to its enactment. So that, both by the provisions of the law and the decision of the Supreme Court, there is eliminated from the present discussion the question as to retroactive legislation. “ Who may complete the six years’ course.” This phraseology clearly contemplates a condition incident to a class of students, in the Naval Academy, impressed upon them by legislation and usage anterior to the act of the 5th of August, 1882.
It will be seen by reference to Finding I that the certificate given to the midshipman at the end of four years spent in the Academy differs in its terms from the certificate issued to the cadet-engineer in the words “preparatory to the two years’ course afloat.” At the end of two years’ course afloat, the cadet-midshipman is required to return to the Academy, subject himself again to some extent to the jurisdiction of the institution, in order that an academic board may determine, whether his acquirement afloat is sufficient, in connection with his scholarship at the institution, to justify his certificate of graduation. His education is theoretical and practical; the one he acquires in the immediate institution, the other.on the.high seas; but each acquirement comes within a course of study covered by a period of six years. Before the claimant became a student at the Academy, Congress had legislated upon the subject of his academic course, and his rights in the institution became and were impressed with all the consequences of that legislation. Section 1520, Bevised Statutes, provides:
“The academic course of cadet-midshipmen shall be six years.”
This law was in force when the act of 1882 was passed, and is unrepealed by it. In speaking of last-named act, Mr. Justice Mathews, in the Bedgrave Case, said:
“The general purpose of' this act is apparent. One main object was to abolish the distinction previously made by law between cadet-engineers and cadet-midshipmen, and for the future to merge both classes in the new designation of naval cadet. The previous differences between them grew out of the separate provisions as to their number, their manner of appointment, their course and term of study, and their pay after four years’ course of study at the Academy.”
*140 And after further discussion of the difference the learned justice concludes:
“This leaves the state and condition of cadetTengineers, who at the date of the passage of the act were already graduates according to the law as it then stood, unchanged, and to this class the appellee belonged.”
The purpose of the act of 1882 was to abolish the distinction in name between cadet-engineers and midshipmen, and to provide for the two but one classification, known to the law at' presentas “naval cadets.” Oneof thedifferences between them, according to the Supreme Court, is a difference of “courseand term of study.” That difference of term of study is a difference of four and six years, and by the decision of this and the Supreme Court it is adjudicated that the term of service of a cadet-engineer is but four years. The term of service of the claimant having commenced in 1877, his course of study being six years, did not terminate until June, 1883, and if so, he was an undergraduateof the class of 1883,and so became subjected to the provisions of the statute of 1882. Having determined that the provisions of the statute are applicable by intendment of Congress to the claimant, it remains for us to notice the other point of contention, made by the very able argument of counsel for the claimant, that upon the completion of the prescribed curriculum, he had a vested right to be commissioned a midshipman. Tested rights incident to a claim are, in legal contemplation, as sacred against the encroachment of the Government as are any rights of private property; but those rights must originate and exist consistent with the just and constitutional powers of the Government to regulate its public policy without being responsibletoindividualsindamages. (Deming v. United States, 1 C. Cls. R., 190.)
The number of men in the Army and Navy is dependent entirely on the will of Congress, and in the legislation incident to that question the highest rights of sovereignty are exercised by the Government. The cases cited in the brief of counsel are the extreme cases on the subject of vested rights; and while they are well considered and ably stated, and of binding authority in this court, they do not go to the extent of protecting the claimant in the enjoyment of a vested right because of his graduation at the Naval Academy.
*141 Section 1521 Revised Statutes provides—
“ When cadet-midshipmen have passed successfully the graduating examination at the Academy-they shall receive appointments as midshipmen, and shall take rank according to their proficiency as' shown by the order of their merit at the date of graduation.”
This is the section of the law which provides for the permanent employment of the students of the Naval Academy. Can there be deduced from this statute an obligation upon the part of the Government to so continue its policy in reference to the ■ Navy as that the claimant’s service as a midshipman would be necessary, and therefore his appointment as such be made by the President-, by and with the advice and consent of the Senate?
In the Fisher Case this court has decided—
“ With some few exceptions Congress may at any time reduce, the salaries of public officers. The only contract which arises from a statute establishing a salary is to pay the incumbent thatsala-ry while that law remains in force. (15 C. Cls. R., 323.)”
The Fisher Case was taken to the Supreme Court, and, upon appeal, the principle announced in this court was affirmed, the Supreme Court saying:
“ Congress therefore could, without the violation of any contract, reduce the salary of the appellee, and had the constitutional power to do so.”
It will be seen by reference to the twelfth finding that the obligation assumed by the cadet on his admission to the Academy is in consonance with the view of the law herein stated. The obligation on Ms part was to serve eight years, “unless sooner discharged by competent authority.” The discharge in this case was in strict pursuance of law, by an executive officer of the Government, authorized by the statute to perform that function. Obligations are not always mutual in the liability of the parties to perform. They are often unilateral, giving a right to one to declare the obligation at an end, while the other party is bound to a full performance. The policy of the statute, under which the claimant was discharged, is a question which can not be approached by the judiciary. It remains for Congress to determine questions of that character, and having determined it as wo have stated, it is the judgment of the court that the petition be dismissed.