Nott, J.,
delivered the opinion of the court:
In 1870, the Army having been reduced by the consolidation of regiments, there resulted a large number of supernumerary officers of the line, who were designated generally in Army, circles as “unattached.” Thus, if the First and the Twentieth Regiments had been consolidated by transferring to the former all the men' of the latter, all of its officers would have been “unattached,” though retaining their commissions and being still in the service. This condition of affairs being manifestly unadvisable, Congress provided for a reduction of the officers of the line by Act 15th July, 1870 (16 Stat. L., p. 318, § 12), in the following manner :
The President was “ authorized to transfer officers from the regiments of cavalry, artillery, and infantry to the list of supernumeraries ; and all vacancies now existing, or which may occur prior to the first daj' of January next (that is to say, prior to January 1, 1871), in the cavalry, artillery, or infantry, by reason of such transfer, or from other canses, shall be filled in due proportion by the supernumerary officers, having reference to rank, seniority, and fitness, as provided in the existing law regulating promotions in the Army. And if any supernumerary officers shall remain after the first day of January next (that is to saj', after January 1,1871), they shall be honorably mustered out of the service with one year’s pay and allowance.”
The plain purpose of this enactment was th at the War Department should select for the full complement of the line the most meritorious officers of corresponding rank, and that all others, *69 whether “attached” or “unattached,” should be transferred to a list of supernumeraries.
These supernumeraries were not to be mustered out of the service forthwith, nor even in the discretion of the President, but were to remain in the service until the end of the current year, and constitute a reserve of officers from which vacancies occurring in the line should be filled. _• Finally, when this period of grace should be passed and the end of the year reached, those who were so unfortunate as to remain upon the list of supernumeraries were to be mustered out, with a gratuity of one year’s pay and allowances.
Tlie statute shows the tender regard of the Government for these officers, a manifest desire that as many as possible of them should be retained permanently in the service, and the laudable intent of not turning away penniless those whose services, on grounds of public consideration, must be dispensed with.
It was clearly the expectation of Congress,.as declared by the statute, that the transfer-of “attached” and “unattached” officers to the list of supernumeraries would take place soon after the passage of the act, and that all retransfers back from the list of supernumeraries to the vacancies which might occur in the line should cease with the end of the year, so that with the beginning of the ensuing' year the work of reorganizing would be finished, and the Army.be standing fairly upon its new footing.
The War Department, nevertheless, did not make any such preliminary transfers to the list of suimrnumeraries; but, on the contrary, by a single general order, which was not issued until the 2d of January, 1871 — two days after the expiration of the year — transferred some officers to the list of supernumeraries and others to fill vacancies thus created, and at the same time directed the muster-out of all who remained unprovided for.
The claimant was such an officer. On the 2d of Jannary, 1871, he was a captain in the Army, duly commissioned, and “attached” to the Third Cavalry. On that day he was transferred to the list of supernumeraries, and an “unattached officer was assigned to fill his place. He contends that after the 31st of December, 1870, the President had ‘no power to take away his commission and, in effect, give'it to another; that if the Presi-' dent could have transferred regularly-attached officers to the *70 list of supernumeraries on tbe 2d of January, 1871, and have retransferred officers from the list of supernumeraries to the place of those thus dismissed, he could have done so on the 2d of January, 1872, and can continue to disorganize and reorganize the Army now, notwithstanding the plain limitation of the statute “prior to the first day of January next ” •, that is to say, prior to the 1st of January, 1871. The claimant in this connection also relies upon the Act 13th July, 1866 (14 Stat. L., p. 92, § 5), which takes away from the President in time of peace the power to dismiss an officer at will, and restricts dismission from the service to cases “inpursuance of the sentence of a court-martial to that effect or in commutation thereof.”
If the case stopped at this point, a question of considerable public as well as private interest would be presented. The claimant protested at the time against the assumed authority of the President to deprive him of his commission. He tendered his services then and has tendered them since, and in various ways has endeavored to maintain a de jure if not a de facto foothold in the Army. He now seeks to recover his official pay for the period subsequent to his muster-out, and insists that it was illegal, and that he is still an officer of the Army. But on the 7th of June, 1871, he presented his pay-account to a paymaster of the Army, and then received and accepted the gratuity of one year’s pay and allowance given by the Act loth July, 1870 (supra) to those supernumerary officers who should be mustered out under its provisions. It is to be admitted at the same time that the claimant then presented a so-called protest, whereby he declared that he accepted payment as pay due and to become due to him as an existing officer in the Army, and that he did not accept it as compensation for having been discharged from the service. But this protest was so much waste-paper. In the first place, a year’s' pay was not due to the claimant if he were still an officer, and the law forbade payments in advance. Act 31 st January, 1823, (3 Stat. L., 723.) In the second place, the paymaster expressly informed the claimant, before payment, that he could not pay with any such reservation expressed on the face of the account, and that if the payment were made, it must be regarded as final payment. In the third place, the pay-account which the claimant presented, on which he was paid and for which he receipted in full, expressly stated that this item of $1,980 was for “one year’s pay under act July 15,1870,
*71 12.” The protest, therefore, was ex parte and ex post faoto. The transaction was within the very letter of the - Supreme Court’s -decision in the case of Savage’s Executors (11 C. Cls. R, 215), and the case stands as though no protest or objection had been made when the claimant accepted-payment.
We are of the opinion that the voluntary acceptance of this g'ratuity given by the statute-was a conclusive admission by the claimant that he came within its terms. We think that it estops or closes his mouth from now questioning the regularity of the proceedings by which he acquired the gratuity. He virtually came to the defendants and said that he had been dismissed from the service according to the terms of the statute, and was thereby and for that reason alone entitled to its benefits. His conduct was tantamount to his resignation. As between ordinary employers and employés, the case would not be shadowed by a doubt. The action of a party cannot change the terms of a statute, but it may affect the .proceedings thereunder. In this case the voluntary action of the.claimant operated as a ratification of the official proceedings -and a waiver of the irregularities which form the basis of his suit; '
It may be that the general order of the War Department, issued on the 2d of January, IS 71 (which was Monday and the first secular day of the month), to take effect on the 1st of January, was valid so far as related-to the transfer to and mustering out of officers on the list of supernumeraries, even if the President had then no power to fill vacancies by assignment under the act. But on this point we express no opinion.
The judgment of the court is that the petition be dismissed.