jSTott, J.,
delivered the opinion of the court:
The question in this case is whether certain officers mustered out of the service under the Army reduction of 1870 are entitled to commutation for traveling expenses from the place of discharge to the place of enlistment. It is conceded that some officers, those who come within the provisions of sections 3 and 12 of the Act 1870, are so entitled. It is contended that •those who wore mustered out by virtue of the provisions of section 11 are not so entitled. The distinction which has been made rests upon the fact that section 11 of the act (under which section the present demand comes) gives to certain officers upon their discharge “one year’s gay,” while sections 3 and 12 .give to certain other officers “one year’s pay and allowances.” It is argued that the commutation for traveling pay and expenses assured to all officers by former statutes upon discharge or muster out is an “ allowance,” and that the act, by implication though not in terms, takes these cases out of the operation of the former statutes, inasmuch as it gives to such officers a discharge pay which,' it is inferred, was intended to exclude all other discharge pay and, consequently, the commutation or allowance previously assured. This argument is suggested by the fact before mentioned, that one section of the Act 1870 gives to one class of officers simply pay,” while other sections give to two other classes “pay and allowances.” What, then, do these terms import ?
Pay is a fixed and direct amount given by law to persons in the military service, in consideration of and as compensation for their personal service. Allowances, as they are now called, or emoluments, as they were formerly termed, are indirect or ■contingent remuneration, which may or may not be earned, and which is sometimes in the nature of compensation, and sometimes in the nature of reimbursement. Both pay and allowances are compensation for services while in service, and the •system of making a portion of the compensation contingent was at the time of the passage of the Act 1870 common to all armies. (Scott’s Military Dictionary; Art., Allowances.)
*497 Thus, a captain of cavalry formerly received $70 per month, which was his pay, and was fixed, direct, and certain. He also received $10 a month if in the actual command of his company. He also was entitled to commutation for the forage of two horses if he actually had them in service. He also was entitled to. rations for himself and servants, and to longevity rations after certain prolonged periods of service; to fuel, to quarters, to transportation, to mileage, and to stationary. These were allows anees. Some of them, considered as compensation, were indirect and some contingent; but in all instances they were something given for service, or as reimbursement.
This being the method, time out of mind, of compensating officers of the Army while in the service, there was also a payment for traveling expenses allowed to both officers and soldiers upon their discharge from the service by the Acts 3d March, 1799 (1 Stat. L., p. 749, § 25, chap. 48), 16th March, 1802 (2 id., p. 133, § 25, chap. 9), ll#7t January, 1812 (2 id., p. 671, § 22, chap. 14), 29th January, 1813 (2 id., p. 794, § 15, chap. 16).
But this payment was not of the nature of wages for service. On the contrary it was a payment to be made after all service had ceased, and was of the nature of indemnity. When an ordinary employó binds himself by contract for work and service, he is free to designate the place of his discharge, and if, without its being designated, his employer should discharge him at a distant or unreasonable place, the law would award him such damages as would make him whole. In the case of persons entering the military service, they can prescribe no such condition and are liable to be sent by their employer to the most remote places of the earth, and are likewise liable to be discharged at any place, or at any moment. In a country with so vast a territory as ours this would often work great wrong to the individual and would result in great inequality of justice throughout the Army generally. One sol her enlisted and domiciled in Washington might be discharged in Washington ; another enlisted and domiciled in Florida might be discharged in Alaska. It has never been the policy of the government to deal out anything but even-handed justice to its soldiers, and if there be any one rule of policy which has been more invariably adhered to than another, it has been the rule of returning an officer or soldier to his home, either positively by his actual discharge there, or constructively by commuta- *498 tiou for traveling expenses and time, or by pay with. transpor: tation and rations in kind.
These things were a part of the moral compact between the government and its soldiers when the Act 1870 was passed. Pay might be increased or diminished, allowances might be added or taken away, traveling expenses might be commuted in money or transportation be furnished in kind, but morally there rested upon the government the obligation of paying a soldier while he remained in the service, and of returning him to his home when his service ended.
This obligation, so far as the knowledge of the court extends, the government has never sought to evade. (See Army Paymaster’s Manual, 1871; Title, Traveling Allowances.)
No instance has been brought to our attention where a different rule had been laid down or a different policy pursued. So far as we are advised this case presents the very first instance where home transportation or commutation-has been withheld from an officer discharged at another place than the place of his enlistment. We do not doubt the power of Congress to change the rule and adopt a harsher policy at any time; but such a change requires the clearest indication of the legislative intent, and cannot be introduced into the government’s policy by either executive officers or courts through the medium of questionable implications.
It is true, as is alleged by the defendants’ counsel, that Congress by the Act 1870 allowed to these officers a years’ pay; but it is also true that such pay was a gratuity which has repeatedly been given before to officers upon their final discharge from service. Since the reduction of the Continental Army under the “White Plains arrangement,” in 1778, to the present time,'extra pay, in the form of half-pay for life, of five years’ full pay, of three months’ additional pay, of one year’s additional pay, of pay and allowances, of bounty, and land warrants, has been allowed almost without exception to officers and soldiers discharged without fault of their own when their services were no longer needed. In some of these instances the discharge pay was promised in advance, as an inducement to enlisting; in others it was made a condition to continuance in the service; in others it was a pure gratuity; in none was it given as a substitute for traveling expenses, &c., from the place of discharge to the place of enl stment.
*499 Some stress is also laid upon tbe report of tbe board and tbe reasons assigned therein for tbe discharge of this officer.
In tbe first place, we do not regard tbe report as evidence of tbe facts alleged. Tbe board of officers was an ex parte, advisory board, intended merely to assist tbe President in tbe unpleasant duty of reducing tbe Army by a process of weeding out tbe least efficient officers, and it was in no sense a court or quasi judicial tribunal. In tbe second place, tbe Act 1870 did not contemplate discharges for offenses. Tk¿ cause prescribed by section 11 (under which tbe claimant was discharged) was “ unfitness.” If the claimant bad been guilty of conduct unbecoming an officer or prejudicial to tbe service, there were abundant provisions of law for bringing him to trial before a court-martial and dismissing him from tbe service without tbe bounty of additional pay. This Act 1870 was intended to reach an entirely distinct class of officers; it was in no sense penal, tbe officers against whom it operated were not criminal, tbe advisory board bad no jurisdiction of offenses, and was without authority to put officers upon their trial for any fault.
When tbe two statutes which affect and control this case are brought side by side, it becomes manifest that tbe latter was not intended to abrogate or supplant tbe other.
Tbe Act 11th Jamiary, 1812 (2 Stat. L., p. 671, § 22, ch. 14), provides:
“That whenever any officer or soldier shall be discharged from tbe service, except by way of punishment for an offense, be shall be allowed bis pay and rations, or an equivalent in money for such term of time as shall be sufficient to travel from tbe place where be received bis discharge to tbe place of bis residence, computing at tbe rate of twenty miles to a day.”
Tbe Act 15th July, 1870 (16 Stat. L., p. 31.5, § 11, cb. 294), provides:
“That tbe General of tbe Army and commanding officers of tbe several military departments of tbe Army shall, so soon as practicable after tbe passage of this act, forward to tbe Secretary of War a list of officers serving in their respective commands, deemed by them unfit for tbe proper discharge of their duties from any cause except injuries or disease contracted in tbe line of their duty, setting forth specifically in each case tbe cause of such unfitness. Tbe Secretary of War is hereby authorized and directed to constitute a board to consist of one major-gen *500 eral, one brigadier-general, and three colonels, three of said officers to be selected from among those appointed to the Regular Army on account of distinguished services in the volunteer force during the late war, and on recommendation of such board the President shall muster out of the service any of the said officers so reported, with one year’s pay, but such muster out shall not be ordered without allowing such officer a hearing before such board to show cause against it.”
The former act, it will be noted, carves out its own exception to the general rule which it establishes, viz, “ except by way of punishment for am offense.” In all other cases of discharge the officer is assured that he shall be transported to his home. The latter act, it likewise will be noted, does not deal with “ offenses,” nor prescribe “punishments.” Neither is the subject-matter of this section the pay of the Army or the allowances assured to officers. The purposes of the section are simply, on the one hand, to reduce the Army, and on the other, to grant a sum in ready money of the nature of a gratuity to those officers who, by its operation, would lose their commissions.
Moreover, it may be noted that section 24 of the same act changed and materially modified the compensation of officers in the Army. It increased the fixed compensation or pay, and then enacted that “these sums shall be in full of all commutation of quarters, fuel, forage, servant’s wages, and clothing, longevity rations, and all alloiv anees of every name and nature whatever.”
If the commutation given by the act of 1812 to discharged officers comes within the term “ allowances,” as is contended by the defendants counsel, and if the omission of that term from section 11 of theact of1870 was intended by Congress to cut off those officers from such commutation] if, in a word, Congress attached that significance to the term “allowances” when they omitted it from section 11, it necessarily follows that when they introduced the term into section 24, and expressly abolished “ all allowances,” they intended that thenceforth no officer should ever receive commutation on his discharge. No one has ever attributed any such sweeping intent to Congress, and the use of the term in section 24 seems conclusive that Congress meant it in sections 3 and 12 to refer to the contingent or indirect compensation of officers while in service, and not to their transportation home after their discharge] consequently its omission from section 11 signifies no more than that the officers therein referred to *501 are not to receive in addition to “ pay for one year” allowances for one year, which, are given to other officers by the other sections. What was given by the statute to both sets of officers was indemnification for the sudden cessation of their salaries. Both were entitled to commutation for traveling expenses to their homes, and the one as much so as the other.
Finally, if any doubt can still exist as to the legislative intent of the Act 1870, it must be removed by examining the language of section 3, which, after authorizing the President “honorably to discharge” officers “who may apply therefor,” provides that “such officers so discharged” “shall be entitled to receiye, in addition to the pay and allowances due them at the date of their discharge, one year’s pay and allow anees.” It seems to the court indisputable that here the “jpay and allowances” due them and the “pay and allowances” given them cannot have been intended as essentially different things; that the real intent was that the same pay and allowances which an officer had been receiving should be paid him for one year in advance; and that the term “ allowances” in the latter clause neither confers nor affects the commutation for traveling expenses from the place of discharge to the place of enlistment, which they and all other officers not dishonorably discharged were entitled to by virtue of the provisions of another statute.
The judgment of the court is that the claimant recover of the defendants the sum of $1,575.