Richardson, J.,
delivered the opinion of the court:
After the suppression of the rebellion it became necessary, in the opinion of Congress, to reduce the number of officers of *35 the Army. It was a difficult and delicate duty. To distinguish between the merits and disqualifications of different officers was no easy task, and whatever course might be taken, it. would unavoidably happen that some meritorious officers, who had served their country honorably and faithfully in its hour of trial in time of war, might be discharged.
To meet the necessities of the case as best they could, Congress inserted the following' sections in Army appropriation act passed July 15, 1870, chapter 294 (16 Stat. L., 318):
“Seo. 11. The General of the Army and commanding officers of the several military departments of the Army shall, as soon as practicable after the passage of this act, forward to the Secretary of War a list of officers serving in their respective commands deemed by them unfit for the proper discharge of their duties from any cause except injuries incurred or disease contracted in the line of their duty, setting forth specifically in each case the cause of such unfitness.
“The Secretary of War is hereby authorized and directed to constitute a board to consist of one major general, one brigadier-general, and three colonels, three of said officers to be selected from among those appointed to the Regular Army on account of distinguished service in the volunteer force during the late war, and on recommendation of such board the President shall muster out of the service any of the said officers so -reported, with one year's pay; but such muster out shall not be ordered without allowing such officer a hearing before such board to show cause against it.
“Sec. 12. The President is hereby authorized to transfer officers from the regiments of cavalry, artillery, and infantry to the list of supernumeraries; and all vacancies now existing, or which may occur prior to the first day of January next, in the cavalry, artillery, or infantry, by reason of such transfer, or from other causes, shall be filled in due proportion by the supernumerary officers, having reference to rank, seniority, and fitness, as provided in existing law regulating promotions in the Army.
“And if any supernumerary officers shall remain after the first day of January next, they shall be honorably mustered out of the service with one year’s pay and allowances. * *
The.claimant was a captain of the First Regiment of Artille^. The commanding officer of the regiment, in compliance with a circular letter from headquarters of his department, forwarded a list of officers in his regiment whom he deemed unfit for the proper discharge of their duties from causes other *36 than injuries incurred or disease contracted in the line of their duty. The claimant’s name was among this list.
A board of officers was constituted in accordance with section eleven of the act, and this list of officers, with the accompanying documents, was laid before them. The claimant was duty notified, appeared before the board, and was fully heard in his defense upon the charges which were preferred.
The board was of opinion that the claimant was disqualified for the service, and recommended that he be mustered out. This was on the 12th of December, 1870. On the 15th of that month he was mustered out by order of the President, in accordance with the provisions of section eleven of the act.
The vacancy caused thereby was subsequently filled by the transfer thereto of Captain Meade, of the infantry, in accordance with the provisions of the twelfth section of the act, by an order of the President, which took effect January 1, 1871. Subsequently Captain Meade resigned, and Captain Bakin was duty appointed, by and with the advice and consent of the Senate, to take effect October 1, 1874, to fill the vacancy. On the Sth of February, 1871, the claimant received and accepted the one year’s pay allowed by section eleven to officers thus mustered out, and gave a receipt therefor.
He now contends that he was never legally discharged, and that he is, and has continued to be ever since 1870, a captain of artillery in the Army, and is entitled to the pay and emoluments of that office.
His claim is founded on the allegation that the proceedings of the board before which he was tried, and by which he was recommended for muster out, were in many respects irregular, illegal, and in violation of his constitutional rights. He regards it as a court convened to try the officers named in the list submitted to it upon criminal charges, and that all its proceedings were required to be conducted with the same formalities as those of a court-martial, otherwise the court itself would be an unconstitutional organization. He points out several alleged irregularities, among -which are, that there was no judge-advocate assigned to the board; but especially that the board received and admitted in evidence, against his earnest objection, the records of a court-martial previously held upon charges substantially the same as those laid before the board, and upon which charges he had been tried and acquitted.
*37 It may be that the board did not proceed with that strict regard to the rules of evidence which are required in courts-martial and civil courts of justice, but it is not necessary for us to consider how far its irregularities extended. In our opinion the board was not a court of any kind. Its character is well described by Judge Nott in the case of Sherburne v. The United States (16 C. Cls. R., 499), in these words:
“The board of officers was an ex parte advisory board, intended merely to assist the President in the unpleasant duty of reducing the Army by a process of weeding out the least efficient officers, and it was in no sense a court or quasi judicial tribunal. In the second place, the act of 1870 did not contemplate discharges for offenses. The cause prescribed by section 11 (under which the claimant was discharged) was ‘unfitness.’ If the claimant had been guilty of conduct unbecoming an officer, or prejudicial to the service, there were abundant provisions of law for bringing him to trial before a court-martial and dismissing him from the service without the bounty of additional' pay. This act of 1870 was intended to reach an entirely distinct class of officers; it was in no sense penal; the officers against whom it operated were not criminals; the advisory board had no jurisdiction of offenses, and was without authority to put officers upon their trial for any fault.”
The board to ■which the claimant’s case was submitted being an advisory board, the proper time for him to have made objections and take exceptions to its proceedings and its recommendations was when the matter came before the President. It is true that the statute required the President to muster out officers reported to him and recommended therefor by such a board as unfit for the proper discharge of their duties. But while it may be that the President could not muster out any officer with one year’s pay, under the act of 1870, before January 1, 1871, without the recommendation of such a board, it is. clear that he was not obliged implicitly and blindly to follow every recommendation thus made to him. Had the claimant, presented to the President, through the Secretary of War, any sufficient reasons for setting aside the proceedings of this board, his complaints would no doubt have been heard and consideration given to them. He did no such thing. (Jn the contrary,, he acquiesced in the report, submitted to the decision of the Pfesident thereon, took his one year’s pay allowed by statute, in case of such mustering out, and gave a receipt therefor.
*38 In oar opinion tbe President’s order cannot be collaterally impeached for irregularities of the board, on whose recommendation he acted;, and that if the claimant ever had any right to impeach the action of that board he has waived it by accepting the bounty of the government allowed only to those who were lawfully mustered out under the act of 1870. We so held in the case of Hildeburn v. The United States (13 C. Cls. R., 62). In that case Judge Nott, speaking for the court, in the opinion said:
a We are of the opinion that the voluntary accceptance of this gratuity given by the statute was a conclusive admission of the claimant that he came within its terms. We think that it estops or closes his mouth from now questioning the regularity of the proceedings by which he accquired the gratuity. He virtually came to the defendants and said that he had been dismissed from the service according to the terms of the statute, and was thereby, and for that reason alone, entitled to its benefits. His conduct was tantamount to his resignation. As between ordinary employers and employés the case would not be shadowed by a doubt. The action of a party cannot change the terms of a statute, but it may affect the proceedings thereunder. In this case the voluntary action of the claimant operated as a ratification of the official proceedings and a waiver of the irregularities which form the basis of the suit.”
These grounds being sufficient to determine the case in favor of the defendants we do not pass upon the question, which is •properly raised, as to whether or not the assignment of Captain Meade to the office of captain of artillery in place of the claimant, and the subsequent appointment of Captain Eakin by the President, by and with the advice and consent of the Senate, in place of Captain Meade, resigned, did not operate as a removal of the claimant from his office in the Army independently of all prior proceedings on the principle set forth by the Supreme Court in the case of Blake v. The United States (103 U. S. R., 236).
The judgment of the court is that the claimant’s petition be dismissed.