Richardson, Ch. J.,
delivered the opinion of the court:
The claimant entered the Naval Academy as a cadet-midshipman, and belonged to the class which finished its six years’ course in 1884, whose official designation was changed to naval cadet, and who otherwise became subject to the provisions of the Act of August 5, 1882 (22 Stat. L., ch. 391, p. 285), which are as follows:
“All the undergraduates of the Naval Academy shall hereafter be designated and called ‘ naval cadets.’
*425 “And from those who successfully complete the six years’ course appointments shall hereafter be madé as it is necessary to fill vacancies in the lower grades of the line and Engineer Corps of the Navy and of the Marine Corps.
“•And provided further, That no greater number of appointments into these grades shall be made each year than shall equal the number of vacancies which has occurred in the same grades during the preceding year; such appointments to be made from the graduates of the year, at the conclusion of their six years’ course, in the order of merit, as determined by the-Academic Board of the Naval Academy.
“The assignment to the various corps to be made by the Secretary of the Navy upon the recommendation of the Academic Board.
“But nothing herein contained shall reduce the number of appointments from such graduates below ten in each year, nor deprive of such appointment any graduate who may complete the six years’ course during the year 1882.
“And if there be a surplus of graduates, those who do not receive such appointment shall be given a certificate of graduation, an honorable discharge, and one year’s sea pay, as now provided by law for cadet-midshipmen; and so much of section 1521 of the Bevised Statutes as is inconsistent herewith is hereby repealed.”
After graduation he received from the Secretary of the Navy the following certificate and notice:
“ Naw Depaetment,
“ Washington, June 26,1884,
Sie : Having successfully completed your six years’ course at the United States Naval Academy, and having been given a certificate of graduation by the Academic Board, but not being required to fill any vacancy in the naval service happening during the year preceding, your graduation, you are hereby honorably discharged from the 80th of June, 1884, with one year’s sea pay, as prescribed by law for cadet-midshipmen, in accordance with the provisions of the act of Congress approved August 5, 1882.”
He was paid one year’s sea pay, mentioned in the certificate, and his undergraduate pay up to the time of graduation. His name was dropped from theNavy Begister, aDdhehasperformed no further service and has received no further pay.
Hi's claim now is that by the determination of the Academic Board as to the order of merit of those entitled to a competitive examination he was of those who by statute had a right to be appointed to one of the vacancies then existing in the- *426 lower grades of the line and Engineer Corps of the Navy and of the Marine Corps; that his certificate of discharge received from the Secretary of the Navy was founded on error, was void and of no force, and that he is still an officer of the Navy, and entitled to pay as such.
There were twenty-five vacancies to be filled; sixteen in the line, five in the Engineer Corps, and four in the Marine Corps.
The examining board received for competitive examination and examined not only the naval cadets of the graduating class of that year 1884, but also the members of the class of cadet-engineers who completed their two years’ sea service at the same time, but who had graduated at the Academy in 1882.
This was in pursuance of the interpretation of the statute held by the Navy Department, that cadet-engineers who at the time of the passage of the act were serving their two years’ course at sea, after having completed their four years’ course at the Academy in 1881 and 1882, were “ undergraduates at the Naval Academy,” and so were made “ naval cadets,” and became subject to the provisions of the act as to examination, promotion, and discharge.
That interpretation was controverted in Leopold’s Gase (18 O. Cls. B., 546), and we there held that cadet-engineers thus serving their two years’ course at sea were not undergraduates, and therefore were not made naval cadets by that act. The same question was subsequently raised, and decided in the same way, in Redgraves's Case and Perkins’s Case (20 C. Cls. R., 226, 438). The decisions in those cases were affirmed by the Supreme Court on appeal. (116 U. S. R., 474, 483).
The cadet engineers who completed their two years’ course at sea in 1884 were therefore not of the “ naval cadets” from whom appointments were to be made in the order of merit, as determined by the Academic Board, and should not have been allowed to compete with the claimant and other naval cadets for appointment to the vacant places.
Omitting cadet-engineers from the competitive examination, and excluding one naval cadet who was dropped, the claimant stood No. 20 in order of merit, and so was entitled to be appointed to one of the twenty-five vacant places.
Even if the five vacancies in the lowest grade of the Engineer Corps should have been omitted from those to be competed for by the naval cadets, as exclusively reserved by former laws to *427 ■be filled by cadet-engineers, a construction of the law which, we do not adopt, there still remained twenty vacancies in the lowest grade of the line and the Marine Corps, to which cadet-engineers had not by any such laws a right to be appointed, and the claimant, being twenty in order of merit, was entitled to be appointed to one of those places.
Thus, in any view of the case which we can take, the Secretary of the Navy was required by law to give to the claimant a certificate of appointment and an assignment to one of the various corps in which vacancies existed upon the recommendation of the Academic Board.
The Secretary gave him a certificate of discharge in lieu of one of appointment, under an interpretation of the statute which this court and the Supreme Court subsequently decided to be erroneous.
The question then arises, How did this leave the claimant? It is contended that, as the certificate of discharge was unwarranted, he remained in the office of naval cadet and still continues to hold that office. He claims the emoluments of a naval cadet since the expiration of the time to which he was paid by the one year’s sea pay in advance received with his certificate of discharge, or the pay of the office to which he was entitled by law to have been appointed.
We can not concur in these views. In our opinion the term ■of office of naval cadets, as did that of cadet midshipmen, expires with the completion of six year’s course, when, if not appointed to another aud different office, they ipso faqto cease to be officers in the Navy.
The Revised Statutes provide as follows:
“ Sec. 1512. The students at the Naval Academy shall be styled cadet-midshipmen.
“ Sec. 1513. There shall be allowed at said Academy one cadet midshipman for every Member or Delegate of the House of Representatives, one for the District of Columbia, and ten appointed annually at large.
“ Sec. 1520. The academic course of midshipmen shall be six years.
“ Sec. 1521. When cadet-midshipmen shall have passed successfully the graduating .examination at the Academy, they shall receive appointments as midshipmen and shall take rank according to their proficiency as shown by the order of their merit at the date of graduation.”
*428 There are no provisions in the statutes for oade't midshipmen or naval cadets as now called by the act of August 5,1882, beyond the term of their course at the Academy. If at their final graduation they receive appointments to other and difieren b offices as provided by law, they remain in the Navy, not as naval cadets, but as officers of the grade to which they are thus appointed. If not promoted they go out of office because their academic course has ended, and the office of cadet-midshipman or naval cadet has expired. A new class has taken their place at the Academy, and the previously existing vacancies in the grades of offices to which they were eligible have been filled.
The Act of July 16, 1870, chapter 295, section 11 (16 Stat. L., 334), made students at the Naval Academy cadet-midshipmen, but did not include them among the grades of the line officers of the Navy.
The lowest of the line officers were midshipmen, and so continued (Rev. Stat., 1362), until changed to ensign by the Act of March 3, 1883, chapter 91 (22 Stat. L., 472), and Act of June 26, 1884 (23 Stat. L., 60).
There can be no doubt that Congress may directly or indirectly limit the tenure of offices created by law in all cases where the Constitution does not establish it.
Thus it seems clear that the claimant went out of office by the expiration of the tenure limited by the course of legislation. He can not, therefore, receive pay as a naval cadet. Nor can he have the pay of any other office to which he might and ought by law to have been appointed, for the reason that he-does not hold and never has held any other office in the Navy. We have no means of ascertaining what other office he would have been appointed to had the Secretary of the Navy followed the law. He might have been made an ensign in the-line, an assistant engineer, or an officer in the Marine Corps according to assignment intrusted to the discretion of the Secretary, as provided by the act of August 5,1882, and the salaries of those officers are not all alike. A similar point arose in Benjamin's Case (10 C. Cls. R., 475.) The court there held that if a midshipman, then an under-graduate at the Naval Academy, were entitled to be commissioned ensign, and the President should refuse to issue his commission, no action would lie for the salary of the office which he did not possess.
*429 Whether or not the claimant, had he moved in due season, might not have maintained a mandamus to compel the Secretary of the Navy to give him the certificate of appointment to which he was entitled is not in issue here, and we should have no jurisdiction of the question if it were presented.
Instead of pursuing that remedy, or any other until this action was commenced, July 17,1886, the claimant accepted the one year’s sea pay, as provided by law for cadet-midshipmen, allowed' by the act of 1882 to naval cadets to whom certificates of discharge were given, and to that extent acquiesced in his discharge. (Hildebrand's Case, 13 C. Cls. R., 62; Duryea's Case, 17, C. Cls. R., 24.)
Whether he be estopped by his own laches and acquiescence •or not, it is clear to us that he can not recover in this court the salary of an office which he does not hold.
The status of cadet-midshipmen or naval cadets after completion of their academic course must not be confounded with that of cadet-engineers who graduated at the Academy in 1881 and 1882. We have held in the Leopold, Bedgreave, and Perkins Cases, as before stated, that those officers were not made naval cadets by the act of August 5, 1882, and so were not subject to discharge by the Secretary of the Navy under the provisions of that act.
Cadet-engineers, after graduation at the Naval Academy, performed service at sea with increased pay. They were styled “ cadet-engineers, graduates,” on the Naval Begister, and were so appropriated for in annual appropriation acts.
They were not required to pass any competitive examination, because they had no claim, as of right, to promotion or appointment to other offices as did cadet-midshipmen.
Section 1403 of the Bevised Statutes provides that—
“ Cadet-engineers who are graduated with credit in the scientific and mechanical class of the Naval Academy may, upon the recommendation of the Academic Board, be immediately appointed as assistant naval constructors.”
Section 1394 provides that—
Cadet-engineers who are graduated with credit in the scientific and mechanical class of the Naval Academy may, upon the recommendation of the Academic Board, be appointed by the President and confirmed by the Senate as second assistant •engineers.
*430 The President was not required to make such appointments,, nor was a time fixed at which he should determine whether or not he would appoint any of them. The only joro vision for their discharge is found in section 1525 of the Eevised Statutes, where it is enacted that—
u Cadet engineers shall be examined from time to time according to regulations provided by the Secretary of the Navy, and if found deficient at any examination, or if dismissed for misconduct, they shall not be continued in the Academy or in the service, except upon the recommendation of the Academic Board.”
If not found deficient at any examination nor dismissed for misconduct, they continued in service as cadet-engineers until the President saw fit to appoint them to other and higher offices.
Not so with cadet-midshipmen, who, as such, disappeared from the Naval Eegister and from the service immediately upon their graduating examination.
The claimant’s petition is dismissed.