Howry, J.,
delivered the opinion of the court:
Plaintiff is the widow of Nathaniel H. McLean, who sues, in her own right and not in a representative capacity, under a special act of Congress. .
Nathaniel H. McLean entered the Military Academy in 1844. He rose through various ranks until, in 1863, he attained the rank of major, and was made assistant adjutant-general in the Regular Army. While so serving he resigned, and his resignation was accepted July 23, 1864. By an act approved March 3,1875 .(18 Stats., 516), Congress authorized the appointment of Major McLean to the first vacancy in the lowest grade in the Adjutant-General’s Department, or to reinstate or retire him with the rank he would have attained had he continued in the service. The President reinstated and retired him as lieutenant-colonel, and he continued on the retired list until his death, in 1884. He did not receive any pay from the date his resignation was accepted, July 23,1864, to the date of his reinstatement, March 3, 1875.
But by an act approved February 24,1905 (33 Stats., 806), it was provided—
“That the proper accounting officers be, and they are hereby, directed to settle and adjust to Sarah K. McLean, widow of the late Lieutenant-Colonel Nathaniel H. McLean, all back pay and emoluments that would have been due and payable to the said Nathaniel H. McLean as a major, from July twenty-third, eighteen hundred and sixty-four, to the date of his reinstatement, March third, eighteen hundred and seventy-five, and that the amount found due by said adjustment is hereby áppropriated, to be paid out of any money in the Treasury not otherwise appropriated.”
Under this act plaintiff presented a claim to the Auditor for the "War Department, who allowed the pay of the officer’s rank and the personal subsistence which would have been due and payable to the deceased officer in accordance with the aforesaid act. The claim for forage for horses and for serv *99 ants’ pay and allowances was disallowed, and this disallowance was confirmed by the Comptroller of the Treasury. The payment as made included pay, subsistence, and longevity rations which would have been due the deceased officer during the time he was out of the service.
The questions now presented relate to the right of plaintiff to recover forage for two horses covering the whole period when the officer was out of the army; and, next, for servants’ pay and allowances during the same period; and, last, for longevity pay, all of which were disallowed under the opinion of the comptroller. The total amount sued for is $6,225.57.
Paramount to the inquiry on the merits is the matter of the power of the court to proceed. Defendants contend that the court can not take jurisdiction, inasmuch as the act under which the claim is made constituted the proper accounting-officers of the Treasury a special tribunal to pass upon the matter and to determine the amount found due, and that the adjustment there made became final. This contention is sought to be supported by the following authorities: Kimberlin's case (104 Fed. Rep., 653); Harvey v. Tylor (2 Wall., 328); Lumber Co. v. Buchtel (101 U. S., 638); Steel v. Smelting Co. (106 Ibid., 447); United States v. Cal. & Oregon Land Co. (148 Ibid., 31); Keim v. United States (33 C. Cls. P., 174; 177 U. S., 290); Plummer's case (24 C. Cls. P., 517); Day's case (21 Ibid., 262); Parish v. MacVeagh (214 U. S., 124).
The jurisdictional statute carries a plain and simple direction to the accounting officers to settle and adjust all back pay and emoluments that would have been due and payable to the officer. The amount of this back pay was fixed by law; and likewise the emoluments, though dependent upon contingencies incident to the service, were regulated by statute. When these contingencies were shown to have existed in the performance by the officer of the things necessary to be entitled, within the meaning of the act, the claimant became also entitled to be paid the sums duly ascertained. The duties thus imposed upon the accounting officers were administrative like unto those imposed upon the Secretary of the Interior under the act of June 16, 1880 (21 Stats., 287), *100 where entries of public lands were authorized to be canceled for conflict, or where an entry had been erroneously allowed and could not be confirmed and where it was provided that the Secretary of the Interior should make repayment. In Medbury v. United States (173 U. S., 492), it was held that where the act which provided for repayment to the person making entry of the fees and commissions, purchase money and excesses paid upon the entry the jurisdiction of the Secretary of the Interior was not exclusive, but that the Court of Claims had jurisdiction wherever the party failed to receive relief from the Secretary.
In Parish v. MacVeagh, supra, it was held that under the act of February 17,1903 (ch. 559, 32 Stats., 1612), the Secretary of the Treasury being directed to determine and ascertain the full amount which should have been paid to Parish if the contract had been carried out in full without change or default by either party and to issue his warrant therefor no judicial duty devolved upon the Secretary; nor did the Secretary have power to determine what was right or proper, but only the administrative duty of ascertaining the amount and paying the same; and, the amount having been ascertained, the claimant was entitled to a writ of mandamus directing the Secretary to issue his warrant.
By the act of March 3, 1887 (ch. 359, 24 Stats., 505) the Court of Claims was given jurisdiction to hear and determine, among other things, all claims founded upon any law of Congress. The court had the same power prior to the act of 1887, and numerous cases have arisen respecting the . extent of the general jurisdiction of the court for many years. The decisions do not seem to have been always harmonious. But pay of an officer can be recovered in this court notwithstanding the refusal of the head of the administrative department to recognize the officer in his office. (Redgrave v. United States, 20 C. Cls. R., 226; 116 U. S., 474; Perkins v. United States, 20 C. Cls. R., 438; 116 U. S., 483.) The rule declared in these cases is the broad principle declared in Medbury v. United States, supra. In the present case there are essentially no disputed questions of fact before the accounting officers; and we are of opinion that *101 the decision must turn upon the proper construction to be given the act granting the relief, and that the court has jurisdiction to determine these questions.
Construing the act of February 24, 1905, supra, the comptroller was of opinion that there could be allowed only such pay and emoluments as would have been due and payable as compensation for services alone, and that nothing could be allowed for such emoluments as were in the nature of reimbursement for expenses incurred and dependent upon conditions other than service as an officer. Because in Sherburne’s case (16 C. Cls. R., 491) this court held that “ allowances,” as they are now called, or “emoluments,” as they were formerly termed, are indirect or contingent remuneration, which may or may not be earned, and which is sometimes in the nature of compensation and sometimes in the nature of reimbursement, learned counsel for claimant urges that the comptroller’s contention that the allowances here claimed were reimbursements only, and therefore not within the statute, is destroyed.
The act of April 24, 1816 (3 Stats., 299), declared:
“ Provided, also, That none except company officers shall be allowed to take as servants or waiters soldiers of the army, and that all officers be allowed, for each private servant actually kept in service not exceeding the number authorized by existing regulations, the pay, rations, and clothing of a private soldier, or money in lieu thereof, on a certificate setting forth the name and description of the servant or servants in the pay account.”
The act of March 3,1865 (13 Stats., 487), provided:
“That the measure of allowance for pay for an officer’s servant is the pay of a private soldier as fixed by law at the time; that no noncommissioned officer shall be detailed or employed to act as a servant, nor shall any private soldier be so detailed or employed, except with his own consent; that for each soldier employed as a servant by any officer there shall be deducted from the monthly pay of such officer the full monthly pay and allowances of the soldier so employed; and that, including any soldier or soldiers so employed, no officer shall be allowed for any greater number of servants than is now provided by law, nor be allowed for any servant not actually and in fact in his employ.”
*102 The act of July 17,1862 (12 Stats., 594), declared:
“ That officers of the army entitled to forage for horses shall not be allowed to commute it, but may draw forage in kind for each horse actually kept by them when and at the place Avhere they are on duty, not exceeding the number authorized by law: Provided, however, That when forage in kind can not be furnished by the proper department, then, and in all such cases, officers entitled to forage may commute the same according to existing regulations: * * *
“And he it further enacted, That major-generals shall be entitled to draw forage in kind for five horses; * * * and majors, for two horses.”
The act of April 24, 1816 (3 Stats., 299), fixed the allowance for forage at $8 per month for each horse.
Paragraph 1123, Revised Army Regulations, edition of 1863, directed that—
“ Forage shall be issued to officers only in the months when due, and at their proper stations, and for horses actually kept by them in service.”
The act of June 20,1864 (chap. 145, sec. 11), provided:
“ That the thirty-first section of an act entitled ‘An act for the enrolling and calling out the national forces, and for other purposes,’ approved March 3,1863, be, and the same is hereby, so amended as that an officer may have, when allowed by order of his proper commander, leave of absence for other causes than sickness or Avounds, without deduction from his pay or alloAvances: Provided, That the aggregate of such absences shall not exceed thirty days in any one year.”
General Orders, No. 5, issued January 26,1872, by the War Department, proAÚded that—
“ Officers of the army entitled to forage for horses may draw forage for horses in kind for each horse actually kept by them when, and at the place where, they are on duty, not exceeding the number authorized by law, but under no circumstances will this forage allowance be commuted or the money valve thereof paid to the officer, his agent, or any other person.”
The pay, rations, and clothing for servants relate to each private servant actually kept in service by the officer; and the forage provided for horses relates to animals actually kept by officers when and at the place such officers are on duty. These statutes carry pay, rations, and clothing in the one case and forage in the other for the public service of the *103 officer when on actual duty. Both items were intended to reimburse the officer for supposed expenditures regardless of salary. Thus, travel fees are designed as a reimbursement or commutation for mileage, irrespective of the amount of “compensation” for services of a district attorney under statutes which provide for both. (United States v. Smith, 158 U. S., 346.) Reimbursement is primarily what the law contemplates. (Odell v. United States, 38 C. Cls. R., 194.)
As an officer of his grade plaintiff’s intestate was entitled to two servants and to forage for two horses had he remained in the military service. But the officer resigned and such voluntary retirement from the service operated to deprive the officer by his own act of the opportunity to draw the allowances incident to the keep of two servants and two horses. The act providing back pay and emoluments was not designed to give life to a claim for the hire of servants and the use of horses by this officer in his private capacity as an individual. The contention that the statute was intended for such purpose must be rejected because it was not contemplated that the officer taking himself out of the service could thus acquire such an advantage over those who' remained in the service. Had the officer continued his connection with the army he would not have been entitled to reimbursement for expenses which were never incurred, as, for example, had he been absent on sick leave or furlough either for his convenience or pleasure. As to the two first items stated the petition is dismissed.
The claim for the additional ration for the time set forth in the sixth finding is analogous to longevity pay and is on a different basis. Such, pay results from so many years of service, and the compensation therefor becomes a part of the dues of the Government to an officer who rounds out the lustrum periods. The act reinstating McLean as a lieutenant-colonel and retiring him in that rank carried the pay of the rank just as if he had actually served, together with the longevity increase. The two sums added carry out the statutory measure of compensation for this case. That isj the officer by the act of reinstatement became entitled to compensation for and during the whole period of service, with *104 the consequent ration increase incident to the services sup•posed to have been rendered for the time set forth .in the petition. It all is, strictly speaking, “ pay proper.” (Irwin v. United States, 38 C. Cls. R., 87; Mills v. United States, 40 C. Cls. R., 530; Ibid., 197 U. S., 223.) This entitles the plaintiff to $682.75 in addition to the amount allowed by the accounting’ officers. Judgment will be entered for that amount.