Campbell, Chief Justice,
delivered the opinion of the court:
The plaintiff was an officer of the Marine Corps on duty at the naval station at Honolulu when, on April 18, 1906, he was ordered to proceed by United States Army transport Sherman, sailing on that date for San Francisco, and to report to the commandant at the naval station, Mare Island, Cal. In obedience to said order, plaintiff embarked on said transport Sherman, and he shipped thereon a barrel and three boxes containing household effects and other personal property belonging to him. Said transport arrived at San Francisco on April 26, 1906. He reported by wireless to the commandant of the navy yard, Mare Island, and was ordered to report to the lieutenant colonel commanding the marine battalion on duty with the Army guarding property and superintending relief work in San Francisco, which was then suffering from the effects of the earthquake and fire that had occurred a few days before. Plaintiff reported accordingly, and served on said duty for a considerable length of time. On account of the conditions prevailing at San Francisco because of said catastrophe, the said transport was ordered to proceed, without discharging her cargo, to Seattle, at which place she arrived on May 1. Passengers aboard said transport were not allowed to remove their effects at San Francisco, except some small baggage, and the plaintiff was not permitted to remove his said property, for which claim is here made. It went in the transport to Seattle, where the vessel discharged her cargo, including plaintiff’s property. His property was stored in a warehouse rented by the Quartermaster’s Department, United States Army, in the Arlington Dock at Seattle, which, on May 7, 1906, was destroyed by fire. A number of officers and civilian employees of the Army lost their personal property which was stored in said warehouse, and plaintiff’s property was also destroyed in said fire. The value of the articles contained in said barrel and boxes was $2,392.90, *345 but the Secretary of the Navy, answering a call by this court, has certified that all of the articles which were lost as aforesaid were not regarded by the department “ as reasonable, useful, necessary, and proper” for a first lieutenant in the Marine Corps to have while in quarters engaged in the public service in line of duty, and that the value of the said articles which were reasonable, useful, necessary, and proper under said circumstances was the sum of $1,125.90.
The plaintiff sues to recover for his loss and claims a right to recover under one or the other of several statutes: (1) The act of March 3,1885, 23 Stat., 350; (2) the act of March 2, 1895, 28 Stat., 962; (3) the act of June 29, 1906, 34 Stat., 554. The last named act provides in terms for reimbursement to officers and . enlisted men of the Navy and Marine Corps who were on duty under orders at San Francisco during said fire in that city “ for losses of clothing and other personal effects sustained by them through said fire.” Plaintiff’s loss was not “through said fire,” and his case is not within the terms or purposes of the act of 1906.
The defendants question the court’s jurisdiction upon several grounds, which may be thus stated: (1) That said acts of 1885 and 1895 provide a special tribunal for the determination of claims for losses which is exclusive of jurisdiction in this court; (2) that plaintiff being an officer of the Marine Corps can not sue under the act of 1885.
It may be added that the question of jurisdiction is one that the court must recognize, whether specifically raised by the parties or not.
In the view we take of the case it is unnecessary to enter upon an extended discussion of the act of 1885. The plaintiff’s case does not come within its provisions, as will be shown. Incidentally, reference will be made to that act to show the difference between it and the later act of March 2, 1895.
Said act of 1885 applies in terms to “ officers and enlisted men in the military service,” and to “ private property ” belonging to such officers or enlisted men. It does not authorize a recovery of the value of any or all property of an officer or enlisted man which may be lost or destroyed under the *346 “ circumstances ” stated in the act, but expressly limits “ the liability of the Government under this act ” to such articles of personal property as the Secretary of War in his discretion shall decide to be reasonable, useful, necessary, and proper for such officer or soldier while in quarters engaged in the public service in the line of duty.” The meaning and effect of the quoted clause are not involved in the instant case, and we express no opinion as to its significance. The act does “ not apply to losses sustained in time of war or hostilities with Indians.”
The act plainly contemplates that the officer or enlisted man who propounds a claim in virtue of said act shall be an officer or enlisted man in the Army. While the term “ military service ” may be broad enough in some connections to include the Army and the Navy as well, the details required by the act of 1885 as conditions to a right of recovery confine the operation of the act to one branch of the service. The Secretary of War would not be designated as the person to determine what articles of personal property would be “ reasonable, useful, necessary, and proper ” for a naval officer. Anri if there could be any doubt as to the correct application of said act when standing alone that doubt would be resolved by the act of 1895, which applies to “ officers, petty officers, seamen, and others in the naval service.” The enactment of the law of 1895 makes plain the limitations of the act of 1885 to officers or enlisted men of the Army. The one act gives rights to certain persons in one branch of the service and the other act relates to the other branch of the service. That there are material differences in the two acts but accentuates the fact that the intention of Congress was as we have expressed. The said act of 1895, as has been suggested, is materially different from the act of 1885. It applies in terms to “ officers, petty officers, seamen, and others in the naval service” and provides for the ascertainment by the proper accounting officers of the Treasury of the value of private property of said persons which may be lost or destroyed in the naval service, “ by shipwreck or other marine disaster” under circumstances stated in the act. Its provisions apply to “such articles of personal property as are *347 required by the United States Naval Regulations” for officers and others “ engaged in the public service in line of duty.”
It is apparent from a comparison of the act of 1885, applying to the Army, and the act of 1895, applying to the Navy, that the latter was drawn with knowledge of the former. It follows the verbiage of the act of 1885 in a number of its provisions. But the act of 1885 provides for payment of losses ascertained by the accounting officers according to its requirements, its language being as follows: “And the amount of such loss so ascertained and determined shall be paid out of any money in the Treasury not otherwise appropriated.” No appropriation for losses occurring subsequent to the passage of the act of 1895 is provided for in the latter act, but it is provided therein that “ all losses that shall hereafter accrue shall be certified by the Secretary of the Treasury at the commencement of each regular session to the Speaker of the House of Representatives, who shall lay the same before Congress for consideration.”
The expression immediately following the foregoing quotation, namely, “ and shall be in full for all such loss or damage,” can only be applied to the losses mentioned in the beginning of the sentence; that is, the losses for which appropriation is made in the act, unless it is meant that if Congress appropriates for the losses as ascertained and determined and reported, the appropriation “ shall be in full for all such loss or damage.” The expression certainly does not qualify the fact that no appropriation is made for losses occurring after the passage of the act. •
The jurisdiction of the Court of Claims within the act of 1885 rests upon the ground that it is a law of Congress which shows an intention to create an obligation on the part of the United States to those persons who bring themselves and their claims within its terms and provisions. Hvoslef case, 237 U. S., 1; Medbury case, 173 U. S., 492, 497; McLean case, 226 U. S., 374, 378. That act provided expressly for the payment of losses ascertained according to its requirements. But the question is whether a like result follows from the terms of the act of 1895, which does not purport to authorize *348 payment by the Treasury for losses occurring after its approval and, on the other hand, it directs that the Secretary shall certify the losses to the Speaker of the House. To accomplish this it must be implied that the accounting officers will file their findings and conclusions with the Secretary of the Treasury.
In Ludington’s case, 15 C. Cls., 453, the court considered a statute (act June 14, 1874, 18 Stat., 75) providing
“The Quartermaster-General, Commissary-General, and Third Auditor of the Treasury shall continue to receive, examine, and consider the justice and validity of such claims as shall be brought before them under the act of July fourth, eighteen hundred and sixty-four, and the acts amendatory thereof; and the Secretary of the Treasury shall make report of each claim allowed by them, at the commencement of each session of Congress, to the Speaker of the House of Representatives, who shall lay the same before Congress for consideration.”
and said with reference thereto as follows:
“This provision indicates with clearness that Congress intended to constitute the public officers there referred to, not as arbitrators or quasi-judicial officers to decide upon the liability of the Government, but as accounting officers to make report upon the claims submitted to them under the former act; and that the final determination as to whether or not the United States should pay any of the claims should be reserved to Congress alone.”
The court therefore held that it had not jurisdiction.
The distinction between an act which limits the authority of the executive officers to ascertaining and reporting the facts relative to claims to Congress, “ there to await legislative action,” and an act which appropriates for the payment of or directs the payment of a class of claims is pointed out in Huffman's case, 17 C. Cls., 55, 59. Speaking of the Ludington case the court says in an opinion by Judge Nott:
“ In the Ludington case the executive officers were without authority to pay the class of claims to which it belonged, and their duty was limited to reporting the facts connected with them to Congress, there to await legislative action. The claimant founded his suit upon such a report, upon the theory that it was an award. The court held that the provision of the act 16 June, 1874, requiring the consideration of *349 Congress upon the reports of the officers charged with the examination of such claims took away whatever character of an award such reports previously might have had ”—
that is, the character they might have had under prior statutes; but of the statute under review in the Huffman case the learned judge, continuing, said:
“ In this case Congress validated a class of claims, appropriated money to satisfy them, and directed the Secretary of the Treasury to examine and pay them.”
And, further, he said:
“ In a word, the decision in the Ludington case was that the alleged cause of action had never become complete, and the ruling of the court in this case is that a perfected right of action is not taken away by the lapsing of an appropriation under provisions of law which are intended to regulate the powers and duties of the accounting officers.”
It is manifest that if the finding of the accounting officers has the finality of a judgment or award this court would have jurisdiction of a suit based upon such award in the event the Secretary of the Treasury refused to pay the, award. Medbury case, 173 U. S., 492. It is equally clear that where the accounting officers are limited to finding the*" amount of a loss and reporting the same to Congress for further action their conclusions have not that element of finality which is essential to the maintenance of a suit upon them. And if there is no conclusiveness to be ascribed to the ascertainment by the accounting officers of the amount of the losses of a claimant propounding his claim under the act of 1895, and if there is no authority for their payment, the plaintiff can not maintain an action founded upon said act in this court. If, upon the other hand, a right of action had existed in favor of naval officers under acts prior to that of 1895, it could with reason be argued that such right of action was not taken away by that act and could be maintained under the prior law. Huffmam, case, supra. But no such condition obtains with reference to the legislation involved in the instant case. The persons to whom the act of 1895 refers had no legal right against the United States for indemnity for their losses “ in the naval service ” prior to said act. Whatever status their claims may be entitled to are to be measured by that act.
*350 It was competent for Congress to authorize payment for losses as was done in the act of 1885, and it was competent for Congress to withhold authority for payment for losses as was done in the act of 1895. “ It is no part of the duty of a court to declare what the law should be.” Our function is to declare it as we find it and as it is. It is well recognized that where Congress appropriates a specific sum to be paid to a person or a class of persons the claimant thereunder has a remedy in this court, because his claim is founded upon a law of Congress. Jordan case, 19 C. Cls., 108; 113 U. S., 418; Hukill case, 15 C. Cls., 562; Sanderson case, 41 C. Cls., 230. It is likewise true that where an act creates a right and provides no sufficient remedy against the Government this court can grant relief. Kaufman case, 11 C. Cls., 659; 96 U. S., 567; Medbury case, 173 U. S., 492. But where there is no recognition of the claim or class of claims as obligations of the United States or where action is directed by accounting officers which is to be reported to Congress for further action by that body and no authority to pay them is conferred, they do not constitute obligations of the Government, and this court can not enforce them.
The question comes within the principle of the Griffin case, 33 C. Cls., 228, with the added feature that in the Griffin case the reference was directly to this court, while under the act of 1895 action by the accounting officers and a report to the Speaker, of the House is directed. The language is not so general as that used in the act considered in the Irwin case, 23 C. Cls., 149, 127 U. S., 125, where the claims were referred to this court for adjudication according to law and a report of the same “ to Congress.” In the said Griffin case Judge Weldon, speaking for the' court, distinguished the Irwin- case, which had been decided in this court and affirmed by the Supreme Court prior to the decision of the Griffin case. In the Griffm case a special act had referred a claim to the court, with full jurisdiction and authority “to hear and determine all questions of fact and law in the said claim, and said court is directed to take order in the premises, and as speedily as may be to report herein to the House of Representatives in all things provided by law.” The *351 court’s opinion lays emphasis upon the fact that the act required a report to the House of Representatives. The act of 1895 requires a similar report by the Secretary of the Treasury of “losses that shall hereafter accrue.” The act of 1895 does not refer the claims to this court, nor does it call for a report by the court to Congress. It fails to appropriate for the payment of losses occurring after the passage of the act. That fact and the requirement that the losses shall be reported to the Speaker of the House and that he “ shall lay the same before Congress for consideration ” show that there is a want of finality in the action of the accounting officers and a reservation by the act of Congress of further consideration. It may be conceded that where an act directs the payment of such claims as may be certified to be .due by the accounting officers it does not vest exclusive jurisdiction in such officers. Sanderson case, 41 C. Cls., 230. But where the act does not direct payment and directs action by the,accounting officers, as in the case before us, this court is without authority to give judgment or to review the action of the accounting officers. This court has frequently held ttíkt in congressional references to the court of bills providing that the head or other departmental officer shall examine and report upon the claim the court does not have jurisdiction of the claim as a Tucker Act reference. Bellah case, 39 C. Cls., 396; White River Utes case, 43 C. Cls., 260. Much stronger is the reason for refusing to take jurisdiction to hear and determine, as under a law of Congress, where the act upon which the plaintiff relies requires action by the accounting officers to be reported to one branch of Congress.
We have not overlooked the provision that the accounting officers are required to ascertain and determine the value of private property of certain persons “ which has been or may hereafter be lost and destroyed in the naval service,” and that by a subsequent proviso it is “ Provided further, That the liability of the Government under this act shall be limited to such articles ” as the Navy Regulations may require under named conditions. But the use of the word “liability,” considered in connection with the whole act (which *352 provides for a liability for losses occurring prior to its enactment and prescribes a definite and different course of action as regards losses occurring subsequent to the passage of the act), is not sufficient to show an intention of Congress to create or recognize an obligation on the part of the United States to pay the losses occurring after the passage of the act. Its meaning, so far as the losses occurring after the passage of the act are concerned, is that it is a direction to the accounting officers in ascertaining the value of the articles lost to confine their inquiry to those articles which the Navy Begulations prescribe.
Why Congress provided a different procedure in claims arising under said two acts is not apparent, but that they did so provide is significant. With the act of 1895 following so closely the verbiage of the act of 1885 in many particulars, the omission of some of the provisions in the earlier act can not escape notice. In the earlier act payment for losses which had occurred within two years prior to the act is directed, and by the act of 1895 payment is directed for losses which had occurred within two years prior to its enactment. In the act of 1885 payment is also directed for ascertained losses thereafter occurring where the claim be presented within two years after the loss occurs. No such provision appears in the act of 1895. The appropriation for the claims' that had already occurred and the want of appropriation gr authority to pay for other claims evince a legislative purpose to withhold authority to pay the latter claims. Exfressiv wriius exclusio alterius est.
We hold therefore that the said act of 1895 does not provide for the payment of claims for losses occurring after its enactment; that its purpose and scope are to refer claims for losses to the accounting officers for action and a report to the House of Bepresentatives, and that this court has no jurisdiction to hear and determine claims arising under the provisions of that act but subsequent to its passage.
The remaining question is whether the plaintiff, being an officer in the Marine Corps, can claim for his loss under the said act of 1885. That act, as we have said, applies to officers and enlisted men in the Army.
*353 In the Jonas case, 50 C. Cls. 281, we considered this question and after reviewing the statutes and decisions concluded in an opinion by Judge Barney that “ generally speaking and as its name indicates, the Marine Corps is a part of the Navy.” To the same effect is United States v. Dunn, 120 U. S. 249; Elliott v. Harris, 24 App. D. C. 11. The statutes recognize the Marine Corps as part of the Navy. Section 1621, Revised Statutes, Navy personnel act, March 3, 1899, 30 Stat. 1004. The Auditor for the Navy Department is required to receive and examine all accounts “ relating to the Naval Establishment, Marine Corps, Naval Academy, and to all other business within the jurisdiction of the Department of the Navy.” Act of July 31,1894, 28 Stat. 206. The President may appoint by and with the advice and consent of the Senate from the officers of the Marine Corps a Judge Advocate General of the Navy. The office of such appointee shall be in the Navy Department and he shall perform certain duties under the direction of the Secretary of the Navy. Act June 8,1880, 21 Stat. 164, as amended by act of June 5, 1896, 29 Stat. 251. Act March 3, 1909, 35 Stat. 768, and act March 4,1913, 37 Stat. 909, regulating sales of stores to the Marine Corps under “such regulations as the Secretary of the Navy may prescribe.”
The Marine Corps is carried upon the Navy Register, and the Navy Regulations assign their duties (Regulations 1909, p. 347), except where detached for duty in the Army. Sec. 1621, Revised Statutes.
We can not assent to the contention of plaintiff that the act of 1885 provides an “ allowance” to officers of the Army which by virtue of section 1612, Revised Statutes, can be available to officers of the Marine Corps. As above shown, said act relates to the officers and enlisted men of the Army. By its terms in requiring a certificate from the Secretary of War as to the articles for which indemnity may be had it excludes all idea that a part of the Naval Establishment comes within its purpose. It was said in 24 Ops. Atty. Geni. 710 that “the mere fact that one set of officers not mentioned are as meritorious as those expressly provided for can not justify a construction liberal enough to give to the *354 former benefits granted in clear terms only to the latter.” It is true, as asserted by plaintiff, that in said opinion the Attorney General held that section 11 of the personnel act did not apply to the Marine Corps, but the reason for so holding was that said statute in subsequent sections legislated specifically with reference to the Marine Corps. The argument advanced that because of sec. 1612, Revised Statutes, officers of the Marine Corps can claim the benefit of the act of 1885 could with equal propriety be applied to a claim by a naval officer who under the Navy personnel act is also entitled to the “ pay and allowances except forage ” provided for officers of corresponding rank in the Army. But, as has been shown, not all of the terms of said act of 1885, if considered independently, would be applicable to the naval branch of the service, and when considered in connection with the act of 1895, which is applicable in terms to the Navy, it can not be held that officers of the Navy can claim the benefits authorized by said earlier act.
It is true, as plaintiff contends, that “ allowances ” have been accorded an extended meaning, but the term has its limitations. The phrase “ pay and allowances ” is considered in the Sherburne case, 16 C. Cls., 491, where in an opinion by Judge Nott it is held that “ pay ” is a direct and fixed amount given by law to persons in the military service, and that “ allowances ” as now called, or emoluments as formerly called, are indirect or contingent remuneration, and that both are compensation for services while in service. In Lander's ease, 30 C. Cls., 311, a retired hospital steward sought to recover commutation for fuel and quarters. The statute provided upon retirement for “seventy-five per centum of the pay and allowances of the rank upon which he was retired.” It was held that the term “ allowances ” did not include commutation for fuel and quarters. While conceding that said term was used in the statute to secure to the retired soldier three-fourths of his entire personal pay, including clothing and subsistence, the court say (p. 318): “There would be no propriety in extending the term to other things which were furnished to him during his active service, not as compensation, but to promote the due per *355 formance of his military duties.” A reason given in that case for the court’s ruling was that the things for which he claimed were “not a fixed allowance attached to the office.” In McLean's case, 226 U. S., 374, 382, is a recognition of the meaning ascribed to “ allowances ” in the Sherburne case, supra, which case is cited in the opinion in the McLean case, 45 C. Cls., 95. The Supreme Court say, “ It is difficult to deal with a distinction between pay and emoluments. Both are rewards of compensation, the one no more than the other, for ‘service supposed’” (226 U. S. 382). Pay and allowances as used in the statutes relate to compensation for service. The allowance may at times take the form of reimbursement, but it is reimbursement for something expended in service, and the amount of the allowance is fixed or regulated by statute or regulation which has the effect of a statute. The term can not be applied to the case of a soldier claiming under the act of 1885 for losses sustained for which under that act he may recover. The conditions prerequisite to a recovery under that act render uncertain the amount of the recovery and do not prescribe in terms the amount or value of the articles lost for which a judgment may be rendered. The value is left for the decision of the accounting officers or the court upon evidence adduced. One officer may therefore recover more than another officer of the same grade or rank, though the general character of the articles lost or destroyed be the same. The act is one of indemnity. It does not purport to pay for service but to indemnify, in a limited way, the officer or enlisted man for losses occasioned under the circumstances and conditions detailed in the act. His recovery is not pay or allowance within the meaning of those terms in the statutes regulating the pay of soldiers.
The petition should therefore be dismissed. And it is so ordered.
Downey, Judge; Barney, Judge; and Booth, Judge, concur.