# UNITED STATES *v.* DUNN.

## APPEAL FROM THE COURT OF CLAIMS.

Submitted January 3, 1887. — Decided February 7, 1887.

Service by an officer of the navy as an enlisted man in the marine corps is to be credited to him in calculating his longevity pay under the act of March 3, 1883, 22 Stat. 472, 473, c. 97.

The marine corps is a military body, primarily belonging to the navy, and under control of the Naval Department, with liability to be ordered to service in connection with the army, and in that case under the command of army officers.

THIS was an appeal from the Court of Claims. The case is stated in the opinion of the court.

*Mr. Attorney General* and *Mr. F. P. Dewees* for appellant.

*Mr. John Paul Jones* and *Mr. Robert B. Lines* for appellee.

Mr. JUSTICE MILLER delivered the opinion of the court.

The plaintiff brought her suit as administratrix of the estate of George Dunn, her husband, who died on the 29th of September, 1884, to recover the difference between what was paid her and what she claimed should have been paid on account of his service as gunner in the navy from the 11th day of April, 1878, until the 10th day of December, 1883. The Court of Claims gave her a judgment for $2238.10. This judgment was rendered upon the following finding of facts:

" 1. George Dunn, the claimant's intestate, was appointed a gunner in the navy, April 11, 1871, and served as such until January 1, 1883. He was subsequently retired, and has since died.

" 2. Prior to his appointment in the navy, he had served in the marine corps. He entered this corps first, June 10, 1843, in the eleventh year of his age, as a boy bound for ten years and twenty-two days to learn music, and June 22, 1844, was rated as a fifer; discharged September 8, 1848.

" Reënlisted September 9, 1848, for four years; discharged June 8, 1849, by order of the Secretary of the Navy, as a minor.

" Reënlisted August 10, 1849, for four years, as a fifer; discharged June 9, 1853.

" On the same day, to wit, June 9, 1853, he reënlisted for four years, as a fifer; discharged April 1, 1854, under a surgeon's certificate.

" Reënlisted August 31, 1854, for four years, as a fifer; discharged February 24, 1857, under a surgeon's certificate.

" Reënlisted May 19, 1857, for four years, as a fifer; discharged September 1, 1862, under a surgeon's certificate.

" The times of actual service from his first enlistment, June 10, 1843, to his last discharge, September 1, 1862, amounts to sixteen years five months and twenty-six days.

" 3. Between the dates of his first enlistment and September 3, 1853, he served on board United States vessels of war, under the command of navy officers, for five years and two months.

" Where and under what command the remainder of his service was rendered does not appear.

## " *Conclusion of Law.*

" Upon the foregoing findings of facts the court decides as conclusion of law —

" That the sixteen years five months and twenty-six days of service, shown in Finding 2 to have been rendered by claimant's intestate as an enlisted man in the marine corps, should be credited to him in calculating longevity pay under the act of March 3, 1883.  22 Stat. 473.

" By so crediting this service the claimant is entitled to recover the sum of $2238.10."

The controversy arises upon the construction to be given to the following clause in the act, making appropriation for the naval service, passed March 3, 1883.  22 Stat. 473.  Section 1 of that statute makes provision for the payment of the officers of the navy, of which George Dunn, the plaintiff's intestate, was one at that time.  After reciting the officers, clerks, and other persons, including naval cadets, whose compensation is embraced in the aggregate sum of three hundred thousand dollars, the section uses this language : "And all officers of the navy shall be credited with the actual time they may have served as officers or enlisted men in the regular or volunteer army or navy, or both, and shall receive all the benefits of such actual service in all respects in the same manner as if all said service had been continuous and in the regular navy in the lowest grade having graduated pay held by such officer since last entering the service."

The plaintiff asserted that in adjusting her claim for her husband's service with the accounting officers of the department she was entitled to the benefit of this provision on account of the service found to have been rendered by him in the second subdivision of the facts as found by the court. These accounting officers refused to make this allowance be-

cause, as they said, the services thus rendered were in the Marine Corps and not in the army or navy.

It must be conceded that the Marine Corps, a military body in the regular service of the United States, occupies something of an anomalous position, and is often spoken of in statutes which enumerate "the Army, the Navy, and the Marine Corps," or "the Army and the Marine Corps," or "the Navy and the Marine Corps," in a manner calculated and intended to point out that it is not identical with either the army or the navy. And this argument is the one very much pressed to show that service in the Marine Corps is not service in the army or in the navy. On the other hand, the services rendered by that corps are always of a military character, and are rendered as part of the duties to be performed by either the army or the navy. If there are services prescribed for that corps by the statutes of the United States, or the regulations of either the army or the navy, which are not performed in immediate connection with the army or the navy, and under the control of the heads of the army or navy, either civil or military, we have not been made aware of it. The military establishment of this country is divided by the general laws of the United States into the army and the navy, and over each of these one of the great heads of departments, called secretaries, is appointed to preside, to manage and to administer its affairs. The administrative functions of the executive are mostly under the President, distributed and allotted among the seven great departments, at the head of each of which is a minister for that department. Such is the theory of the distribution of executive administration established by the statutes of the United States.

The Marine Corps is a military body designed to perform military services; and while they are not necessarily performed on board ships, their active service in time of war is chiefly in the navy, and accompanying or aiding naval expeditions. In time of peace they are located in navy yards mainly, although occasionally they may be used in forts and arsenals belonging more immediately to the army. The statutes of the United States, in prescribing the duties which they may be required

to perform, have not been very clear in any expression which goes to show how far these services are to be rendered under the control of the officers of the navy or of the army. It is clear that they may be ordered to service in either branch; but we are of opinion that, taking all these statutes and the practice of the government together, they are a military body, primarily belonging to the navy, and under the control of the head of the naval department, with liability to be ordered to service in connection with the army, and in that case under the command of army officers.

Section 1599 of the Revised Statutes of the United States enacts that no person under twenty or over twenty-five years of age shall be appointed from civil life as a commissioned officer of the Marine Corps until his qualifications for such service have been examined and approved under the directions of the Secretary of the Navy; and § 1600, immediately following, provides that all marine officers shall be credited with the length of time that they have been employed as officers or enlisted men in the volunteer service of the United States. Sections 1613, 1614, 1615, and 1616 very clearly place the non-commissioned officers, musicians, or privates of the Marine Corps under the orders of the Secretary of the Navy, with reference to their performance in the Capitol grounds, or the President's grounds, and with reference to their rate of pay and their rations. Section 1621 declares that the Marine Corps shall at all times be subject to the laws and regulations established for the government of the navy, except when detached for service with the army by order of the President, and, when so detached, shall be subject to the rules and articles of war prescribed for the government of the army. Section 1623, which relates to the retirement of officers with rank and pay, enacts that, in the case of an officer of the Marine Corps, the retiring board shall be selected by the Secretary of the Navy, under the direction of the President. Two-fifths of the board shall be selected from the medical corps of the navy, and the remainder from the officers of the Marine Corps.

It seems to us that these provisions of the Revised Statutes, bringing together the enactments of Congress on the subject

of the Marine Corps, show that the primary position of that body in the military service is that of a part of the navy, and its chief control is placed under the Secretary of the Navy, there being exceptions, when it may, by order of the President, or some one having proper authority, be placed more immediately, for temporary duty, with the army, and under the command of the superior army officers.

This view of the subject was taken by this court in the case *Wilkes* v. *Dinsman*, 7 How. 89. Dinsman was a private in the Marine Corps under Commodore Wilkes in the exploring expedition, and his term of service having expired he entered into a contract for reënlistment to serve until the return of the vessel. The act which authorized his reënlistment applied to seamen and to service of anybody enlisted for the navy. Dinsman was subjected to severe discipline by the orders of Commodore Wilkes, for which he brought this suit in the nature of an action of trespass, and alleged that after the expiration of his service he was not lawfully reënlisted, as he was not a seaman when enlisted for the navy, by reason of his being in the Marine Corps. The court examined into this question and held that he belonged at that time to the navy, saying, among other things: "Though marines are not, in some senses, 'seamen,' and their duties are in some respects different, yet they are, while employed on board public vessels, persons in the naval service, persons subject to the orders of naval officers, persons under the government of the naval code as to punishment, and persons amenable to the Navy Department. Their very name of 'marines' indicates the place and nature of their duties generally. And, beside the analogies of their duties in other countries, their first creation here to serve on board ships expressly declared them to be a part 'of the crews of each of said ships.' Act of 27th March, 1794, 1 Stat. 350, § 4. Their pay was also to be fixed in the same way as that of the seamen, § 6, p. 351. So it was again by the act of April 27, 1798, 1 Stat. 552. And they have ever since been associated with the navy, except when specially detailed by the President for service in the army. . . . Thus paid, thus serving, and thus governed like and with the navy, it is

certainly no forced construction to consider them as embraced in the spirit of the act of 1837 by the description of persons 'enlisted for the navy.'"

And referring to the act of June 30, 1834, the provision of which is found in § 1621 of the Revised Statutes, "that the said corps shall at all times be subject to and under the laws and regulations which are or may hereafter be established for the better government of the navy," the opinion says that this strengthens the conclusion of the court, and that that corps thus in some respects became still more closely identified with the navy.

Whatever view may be taken, it cannot be considered as a distinct military organization, independent of the departments of the army and navy, and under the supervision and control of neither of them, having no superior outside of its own officers, except the President. Such a position is at war with the whole policy of the distribution of power among the executive departments, as we have already shown; and while it may be true that it is not so exclusively a part of the navy as ships and navy yards are, yet its general supervision and control remain with the Navy Department.

We think that the act of 1883, under which this suit is brought, providing for a credit for the actual time of service in the army or navy, or both, is comprehensive enough to include the services of George Dunn, recited in the second finding of the court, as they *must* have been rendered either in the one or the other, — either in the army or the navy, — and if rendered in either, or part in one and part in the other, they still entitle the claimant to receive compensation on the basis of services coming within the statute.

*The judgment of the Court of Claims is affirmed.*