WeldoN, J.,
delivered the opinion of the court:
The petition of claimant alleges that he is an officer in the Navy, to wit, a carpenter, and that he served as such from the 16th day of May, 1867, to the bringing of this suit; that prior to said appointment as Carpenter he served from the 20th day of January, 1862, to the 16th day of July, 1868, as an apprentice in the Navy of the United States; that he has never received any credit upon his warrant as carpenter for the time of his said service as an apprentice, or additional pay on account of such credit, as he was entitled to under the provisions of the act of March 3, 1883.
The allegations of the petition are substantially sustained by the evidence, and present the question, whether a person serving as an apprentice in the Navy is entitled to add the time of such service in the computation of his longevity pay, under the provisions of the act of March 3, 1883. (22 Stat. L., 473.)
This suit is predicated upon the allegation that he is, andthe refusal of the Department to pay is based upon the allegation that he is not.
The provision of the statute upon which the controversy arises is as follows:
“All officers of the Navy shall be credited with the actual time they may have served as officers or enlisted in the regu-. lar or volunteer Army or Navy, or both, and shall receive all the benefits of such actual service in all respects in the same manner as if all said service had been continuous and in the regular Navy, in the lowest grade having graduated pay since last entering the service.”
The claimant from the time he became a carpenter in the Navy was a warrant officer, and is entitled in law to receive the benefits of the statute of 1883; provided, he as an apprentice comes within the provision, “ enlisted in the regular or volunteer Army or Navy.” The attention of the court has been cited to several sections of the United States Statutes, decisions of the Supreme Court, this court, and other courts, in support of the theory that the claimant is entitled to the benefits of the act of 1883 in the adjustment of his pay under said act. *
We have been unable to find any statute authorizing the employment of persons as apprentices in connection with the *23 navy-yards, and whatever has been done in that particular was under naval regulations. In the year 1852 the Navy Department adopted certain regulations “for the admission of apprentices into the navy-yards of the United States,” under which the claimant became an apprentice. Those regulations prescribed the manner in which a boy might become an apprentice in the navy-yards, by being examined before a board. The applicant had to be over 15 and less than 17 years of age, possessed of a good character, and having the physical ability to perform the labor incident to the situation.
The regulations of 1852 modifying the former were the regulations in force at the time the claimant became an apprentice, and were the authority on the part of the naval officer to enter into the agreement, by which his relations were established, and upon which he now seeks a benefit under the act of 1883. The act of June 30,1789 (1 Stat. D., 575), and all subsequent acts to, and including the act of March 3,1837 (5 Stats, 153), had reference to the employment of boys in the regular navy service on board ships, and not their employment in the navy- • yards, as provided for in the regulations of 1852, and former regulations.
The relation between the defendants and claimant was established by the agreement providing for the apprenticeship of the claimant, which was executed by his father and him jointly with the agent of the defendants, and which simply provided for the performance of the duty ordinarily incident to an indentured apprentice. He was not required to take an oath, perform any naval or military duty, but simply to well and truly serve the United States, be obedient to all persons in authority over him, and subservient to all laws and regulations that might be established for the government of the navy-yards. He was required to furnish his own tools, board, clothing, and medical attendance. The service which he was to perform was not subject to the restraints, inconveniences, and powers incident to military or naval service, but such restrictions as are legally and ordinarily incident to the relation of master and apprentice. No statute of the United States had provided for the enlistment of men or boys, to be employed in the navy-yards of the United States, and the regulations did not provide for any such enlistment, if that could be done by mere regulations, If the claimant had failed to perform his duty, and had *24 deserted from tbe service, can it be said tbat be would "have been amenable to tbe laws of war and liable to be shot for desertion ?
Section 1417 provides for tbe enlistment in tbe Navy of tbe United States, “including seamen, landsmen, mechanics, firemen, and coal beavers, and including 750 apprentice boys, which shall not exceed 8,250.” Section 1418 provides tbat boys between tbe ages of 15 and 18 may be enlisted to serve in tbe Navy until they shall arrive at tbe age of 21 years; and section 1419 provides tbat minors between tbe ages of 15 and 18 shall not be enlisted for tbe naval service without tbe consent of their parents or guardians. Nowhere do we find in tbe staD ntes any reference to tbe services of boys in tbe nav'y-yard spoken of as an enlistment in tbe Navy. Tbe service which boys as apprentices were called upon to perform was on board a ship.
In the Dunn Case (120 U. S., 249; 21 C. Cls. R., 20) tbe claimant was regularly enlisted into the Marine Corps, and tbe ' Supreme Court, in confirmation of tbe decision of this court, held: “Tbe Marine Corps is a military body, primarily belonging to tbe Navy and under control of tbe Department in tbe liability to be ordered to service in connection with tbe Army, and in tbat case under tbe command of officers.”
Dunn, on bis admission into tbe Marine Corps, signed an obligation, in which be acknowledged “I have voluntarily enlisted myself to serve four years in tbe Marine Corps of tbe United States unless sooner discharged,” reciting certain acts of Congress; and in connection with tbe execution of such obligation be took an oath, tbe substance of which is that be would bear true allegiance to tbe United States, serve them against all their enemies, observe and obey tbe orders of tbe President of tbe United States and officers appointed over him.
Tbe legal effect of bis obligation is, tbat be assumed and agreed to perform all of tbe duties incident to a soldier enlisted in tbe military service of tbe United States. In tbe case of Hen dee, be was held tobe an officer within tbe meaning of tbe act of 1883, because be was subject to certain duties and obligations incident to military service, and because of such duties and obligations be came within tbe purpose and intent of tbe act providing for. longevity pay.
*25 In the absence of any law, providing for the enlistment of boys into the Navy, to be employed as apprentices in the navy-yard, the fact that claimant’s connection with the service was founded on the ordinary contract of apprenticeship, that he took-no oath, and was not subject to the performance of any military duty or subject to the restrictions of military life, that he was not amenable to the highest obligation of a soldier— continued service, and that his whole duty was the result of a contract or agreement made by him and his father, founded on the regulations of the Navy, we determine as a conclusion of law that he does not come within the act of March 3, 1883, and his petition is therefore dismissed.