DETERMINED IN

# THE SUPREME COURT

OF THE

## TERRITORY OF NEW MEXICO.

[No. —. February 1, 1897.]

### WESTERN HOMESTEAD & IRRIGATION COMPANY, Plaintiff in Error, v. FIRST NATIONAL BANK OF ALBUQUERQUE, Defendant in Error.

GARNISHMENT—ORIGINAL JUDGMENT—ASSIGNMENT OF ERRORS—NOT TENABLE, WHEN.—On writ of error in a garnishment proceeding, where the original judgment remains unappealed from for more than one year from the date of its original entry, errors assigned in respect to such judgment are not tenable, and the judgment remaining undisposed for that time can not now be collaterally attacked.

ID.—SUMMONS—SERVICE—SUFFICIENCY.—In such proceeding, failure to serve the garnishee with a summons in the form prescribed by the clerks of the district courts, is not ground for reversal; it is sufficient if the service be in substantial compliance with the requirements of the statute. Fitzgerald v. Fitzgerald, 137 U. S. 98.

ID.—CORPORATIONS—CONTRACT BY AGENT.—Where the by-laws of a corporation required its contracts to be signed by two at least of its officers, and its general manager made a verbal contract with a third party in good faith, which was afterward reduced to writing, and signed by him as such manager in the presence of all its officers, without objection,—Held: That the corporation was bound by the contract.

VOL. 9 N. M.—1 (1)

ID.—CORPORATIONS—CONTRACTS NOT UNDER SEAL—SUFFICIENCY.—In
such case, it is not necessary to bind a corporation, that its con-
tracts be under seal.

*Error*, from a judgment for plaintiff, to the Second Judicial
District Court, Bernalillo County.   Affirmed.

The facts are stated in the opinion of the court.

F. W. CLANCY for plaintiff in error.

A. B. McMILLEN for defendant in error.

LAUGHLIN, J.—This cause came here on error to
district court sitting in and for the county of Bernalillo, in
the Second judicial district.   The defendant in error, the
First National Bank of Albuquerque, recovered judgment on
March 5, 1895, against Jesse Anthony and George E. Lewis
on their promissory note for $240.10 and costs.   Thereafter
the defendant in error sued out garnishment proceedings
against the plaintiff in error, the Western Homestead & Irri-
gation Company, alleging it, said plaintiff in error and
garnishee, was indebted to said Anthony, said judgment
debtor.   Thereafter, on the twenty-third day of May, 1896,
the court directed a verdict in favor of the defendant in error
and against the garnishee and plaintiff in error for $288.54
and costs, and judgment was entered accordingly; whereupon
the garnishee moved for a new trial, and in arrest, both of
which motions were denied; and on the sixth day of June, 1896,
error was sued out to this court.   The errors assigned by the
plaintiff in error are:   1.   "The court below erred in enter-
ing judgment nil dicit against the original defendant, while
there was in the record, undisposed of, a plea on which issue
had been joined."   2.   "The court below erred in trying the
original cause without a jury."   3.   "The court below erred
in entering judgment for the amount appearing to be due on
the promissory note sued on, for the reason that the same was
not denied under oath."   These errors apply to the original
suit of the First National Bank against Anthony and Lewis.

GARNISHMENT:
original judg-
ment: assign-
ment of errors:
not tenable,
when.

The judgment in that case was entered in the court below on the fifth day of March, 1895, and it does not appear from the record that any motion for new trial was filed, or any effort made to review the judgment then entered in the court, until the twenty-third day of May, 1896, and not until judgment had been entered against the garnishee, plaintiff in error. Thus the original judgment remained unappealed from for more than a year from the time of its original entry. "Appeals in equity cases and writs of error in common law cases may be taken at any time within one year from the date of the rendition of final decrees or judgments." Laws 1891, chap. 66. It is manifest that the writ of error from the judgment in the original case against Anthony and Lewis was not seasonably sued out, and the errors assigned with respect to that part of the case are untenable. And, the judgment having remained undisturbed for more than the period provided by statute in which the writ of error must be availed of, it can not now be attacked in the collateral manner here sought. Freem., Judgm. [3 Ed.], sec. 249. Under the authority of Knaebel v. Slaughter (N. M.), 34 Pac. 199, the first assignment here would have been available if the writ of error had been sued out at any time within one year from the time of the rendition of the final judgment; but it was not, and therefore this objection can not be maintained. While the garnishment proceeding is ancillary to the original suit, and is a remedy in aid of the execution issued on the judgment in that suit, yet it is a separate and distinct action in rem, and can not be considered as a part of the original action. It raises separate and distinct issues from the main action, and involves different parties, and is appealable in the same manner as other causes of action of a like nature; and both the original action and the garnishment proceedings might have been brought to this court on separate writs of error. 8 Am. and Eng. Ency. of Law 1257. And it was held in Pupke v. Meador, 72 Ga. 230, that the two cases could not be

consolidated, but must be brought to the appellate court on
separate and distinct writs of error. And the reversal of the
judgment in the main case also reverses the judgment in gar-
nishment case, but a reversal of the garnishment judgment
does not reverse the main case.

The next objection is as follows: 4. "The court erred
in denying garnishee's motion to quash the notice of garnish-
ment." Counsel for plaintiff in error appeared specially, and
moved to quash the notice, "for the reason that the same is
not in terms made returnable in the same way as original pro-
cess for bringing defendants into court." This motion was
based on the eighth subdivision of rule 27 of the rules of the
district courts, which is as follows: "(8) A like practice
shall prevail in garnishee proceedings upon executions, with
such omissions, additions and changes as may be applicable
thereto; but the notice of the garnishee shall be in terms
returnable in the same way as original process for bringing de-
fendant into court." The record shows that the execution
was issued on the fourteenth day of March, 1895, and the
notice of garnishment was attached to it, and that both were
served on the garnishee on the thirteenth day of May, 1895,
at the county of Bernalillo, and that the notice
cited the garnishee therein named to appear on
the first Monday of June following. The
notice of garnishee was in the form pre-
scribed by the statute and by the rules of the district courts.
The statute provides as follows (Comp. Laws 1884, sec. 1935,
subd. 2): "Garnishees shall be summoned by the sheriff
declaring to them that he summoned them to appear at the
return term of the writ to answer the interrogations which may
be exhibited by the plaintiff, and by reading to them if re-
quired." The writ referred to in the statute means the execu-
tion. And it is provided further in section 2159: "That if the
officer fails to find property sufficient to make the same he shall
notify all persons who may be indebted to said defendant not
to pay said defendant, but to appear before the court out of

SUMMONS:
service:
sufficiency.

which said execution issued and make true answer on oath concerning his indebtedness, and the like proceedings shall be had as in cases of garnishees summoned in suits originating by attachment." It is plain then, that the process to bring garnishee before the court was in substantial compliance with the statute. The rule of district courts invoked is not in contravention of the requirements of the statute. The garnishee was notified in the manner required by the statute to appear at the first return day occurring twenty days after service, and appeared specially in the motion to quash the notice, which motion was denied by the court. Then a general appearance was entered, and the case proceeded in the regular manner provided in such cases. Judgment rendered, and brought here on writ of error. And this court could not be justified in reversing the case simply because the garnishee had not been served with a summons in the form prescribed by the clerks of the several district courts, when the procedure pursued was in substantial conformity with the requirements of the statute. Fitzgerald & Mallory Const. Co. v. Fitzgerald, 137 U. S. 98,

There are a number of other errors assigned for reversal, one of which is as follows: (7) "The court below erred in overruling garnishee's objection to the admission of oral evidence as to whether E. W. Thomas had general supervision of the business of the garnishee, and in holding that, if Thomas was accustomed to act in a certain way as to these matters and the business went on and he was held out by the corporation to transact such matters and they ratified such authority by acquiescence, their silence would bind the corporation." It appears that to establish the indebtedness of the garnishee to the judgment debtor, Anthony, the defendant in error offered in evidence a certain contract, signed by said Anthony as party

CORPORATION:
contract by
agent.

of the first part, and the garnishee corporation, by one E. W. Thomas, as general manager, as party of the second part, and under the terms of this contract it is contended by defendant in error that plaintiff in error is indebted to said Anthony, and therefore

liable as garnishee. The contract discloses that on January 3, 1895, the said Anthony was then the owner of certain interests consisting of capital stock and assets in the Rio Puerco Irrigation & Improvement Company, and in the Rio Puerco Irrigation & Agricultural Company, both of which were domestic corporations; that said Anthony then sold all his interests in both said corporations to the Western Homestead & Irrigation Company, the garnishee, for which the garnishee agreed to pay certain sums of money and securities therefor, as in the contract specified; and the said Anthony further agreed as an additional consideration to give his services and labors to the said garnishee company for a period of ten months from and after the first day of November, 1894. On the day the contract was signed, Anthony assigned his said interests to the garnishee company, and deposited it with the garnishee's attorney at Albuquerque. The garnishee company contends that said Thomas had no authority, under its by-laws, to enter into said contract, and that, therefore, it is not bound by it. In support of this contention garnishee offered in evidence its by-laws, of which the two sections material to this case are as follows, to wit:

"The general manager shall have general charge of the office of the company, and have general supervision of the books and accounts. He shall give general directions as to the work to be done, provide ways and means for doing such work, suggest the form of papers, contracts and obligations, and in general direct its movements and affairs. He shall have power to draw on the treasurer to carry out the interest of the company, and to make contracts as his judgment may direct. He shall be authorized to receive and receipt in the absence of the secretary any funds which may come into his hands, and account for the same to the secretary, and sign such papers and perform such other duties as the board of directors may prescribe."

"Contracts and Conveyances. All notes, deeds, contracts, and other evidences of debt or obligations, to bind the com-

pany, must be signed by two at least of the following officers: President, general manager, secretary, or treasurer, but no money shall be borrowed or note given except the same is authorized by the board of directors."

Upon the validity of this contract the liability of the garnishee is fastened, if at all. It will be observed from the by-laws that the duties of the general manager are of a very broad and general nature, and pertain to the general management of the business affairs of the garnishee company. It is also apparent therefrom that "all notes, deeds, contracts, and other evidences of debt or obligations, to bind the company, must be signed by two, at least, of the following officers: President, general manager, secretary, or treasurer, but no money shall be borrowed or note given except the same is authorized by the board of directors." It appears from the testimony that at the time the contract was entered into verbally between Anthony and the garnishee company, in October or November, 1894, McChesney, president, Tygert, Thomas, and McMasters, were all directors and officers of the garnishee company, and were present, and made, agreed to, and entered into the verbal contract with said Anthony, which was thereafter reduced to writing, and signed by said Anthony, and by said Thomas as general manager, and that all the directors and officers of the garnishee company consented to and had full knowledge of the contents and existence of the contract at all times, and acquiesced in the same, and never at any time repudiated or in any manner changed the contract in any particular. It further appears that said Anthony, in pursuance of the fulfillment of his part of the said contract, entered upon the duties assigned him by garnishee company, and worked for four months, during which time he received and executed all orders in and about the work assigned to him; that after the expiration of that time, and during the remainder of the ten months for which he had agreed to work for garnishee company, he at all times remained present at the place, ready, able, and willing to perform any labor or duties

which it might assign to him; but that he received no orders
or instructions to do any work or to perform any duties, but
he was not discharged or released from the employment of
the said garnishee company.    There is nothing to show, nor is
it contended, that the garnishee company ever at any time
delivered up the assignments of the interests executed by said
Anthony to it, or that any reassignment of the same was ever
made, but, to the contrary, in so far as this record discloses,
the interests and property assigned by said Anthony are now
the property of and in the possession of the garnishee com-
pany, which the evidence tends to show amount to several
thousand dollars.    The facts, as shown from the record, are
amply sufficient to sustain the verdict and judgment of the
court below.

It would be contrary to sound principles of law, and a
travesty on justice, to hold that an officer of a corporation may
enter into a contract in good faith with an individual for the
transfer to it of valuable property, hold and keep it, and then
decline to pay for it, because, forsooth, the officer so entering
into the agreement did not have special authority to make and
sign the contract conferred on him by the provisions of its
secret by-laws.    But the case at bar is much stronger, because
all the officers of garnishee company were present when the
terms of the contract were agreed upon verbally, which was
afterwards written out by the general manager, and signed by
him on behalf of garnishee company; and none of them
appeared to have at any time attempted to repudiate any part
of it until on the trial of this cause.    Morawetz on Private
Corporations (section 593), says:  "It is plain that a person
who has dealt with an agent of a corporation in good faith,
within the scope of the apparent powers conferred upon him
by the company, is not affected by secret instructions limiting
these apparent powers.    The same is usually true of restric-
tions on the apparent powers of the agents of a corporation by
the company's by-laws.    There is no general rule compelling
persons dealing with a corporation, at their peril, to take notice

of its by-laws.   If a corporation appoints an agent of a class
having certain functions and powers according to general cus-
tom, a person dealing with such agent is not affected by a by-
law restricting the powers which would ordinarily belong to an
agent of that class, in the absence of actual notice of the by-
laws."   Mr. Story, in his work on Agency (section 17), says:
"A general agency properly exists where there is a delegation
to do all acts connected with a particular trade, business, or
employment."   And the same author, in section 126, says:
"In the former case [referring to a general agent] the princi-
pal will be bound by the acts of the agent within the scope of
the general authority conferred on him, although he violates
by those acts his private instructions and directions, which are
given to him by the principal, limiting, qualifying, suspending,
or prohibiting the exercise of such authority under particular
circumstances."   And in section 127 he says:   "The ground
of this distinction is the public policy of preventing frauds
upon innocent persons in the encouragement of confidence in
dealing with agents.   If a person is held out to third persons,
or to the public at large, by the principal, as having general
authority to act for and to bind him in a particular business or
employment, it would be the height of injustice, and lead to
the grossest frauds, to allow him to set up his own secret and
private instructions to the agent, limiting his authority and
thus to defeat his acts and transactions under the agency,
when the party dealing with him had, and could have, no
notice of such instructions.   In such cases good faith requires
that the principal should be held bound by the acts of the
agent within the scope of his general authority."   When this
corporation appointed Thomas as its general manager, and
held him out to the public as such, it became bound to all third
persons dealing with him on the strength of such apparent
power, and within the scope of his duties, for all acts within
the legitimate powers of the corporation; and, if Thomas vio-
lated any of the secret instructions and by-laws, the principal
should suffer, and not an innocent third party, who acted upon

the representations of the principal as to the extent of the agent's authority.

It was not necessary to the validity of the contract in question that it should have been made under the corporate seal of garnishee company. Mor. Corp., sec. 338, says: "In former times it was held that a corporation could not express its will, or enter into a contract, except through an CORPORATIONS: instrument under seal, executed by a duly con- contracts not under seal: stituted agent. This doctrine certainly had no sufficiency. principle based upon reason to support it. On the contrary, it seems to have been the result of the ignorance of the art of writing during the Dark Ages. It was never rigorously applied in all cases, which shows that it did not result from the nature of the corporation. And in modern times the ancient rule has been wholly discarded. It is now a settled rule through the United States that a corporation may make a contract without the use of a seal in all cases in which this may be done by an individual, and it is equally well settled that an agent of a corporation may be appointed without the use of a seal, whatever may be the purpose of the agency." In the case of Kelsey v. Bank, 69 Pa. St. 426, on the question of ratification, Williams, J., said: "The law is well settled that a principal who neglects promptly to disavow an act of his agent, by which the latter has transcended his authority, makes the act his own; and the maxim which makes ratification equivalent to a precedent authority is as much predicable of ratification by a corporation as it is of ratification of any other principal, and is equally to be presumed from the absence of dissent." And in the case of the Indianapolis Rolling-Mill Co. v. St. Louis, Ft. S. & W. R. Co., 120 U. S. 250, the supreme court of the United States hold that a disaffirmance of the unauthorized acts of the agent of a corporation within six months after knowledge by the directors is not exercised promptly, and comes too late. And in the case of Pittsburg, C. & St. L. R'y Co. v. Keokuk & H. Bridge Co., 131 U. S. 371, the same court says: "The principal

positions taken in the arguments for the appellants were that
the Indiana Central Company and the Pennsylvania
Company never authorized their officers to execute the
bridge contract, or to bind them by it; and that the contract
was beyond the scope of their corporate power.   But
the court is of the opinion that on the facts of this case neither
of these positions can be maintained.   When the president
of a corporation executes in its behalf, and within the scope of
its charter, a contract which requires the concurrence of the
board of directors, and the board, knowing that he has done
so, does not dissent within a reasonable time, it will be pre-
sumed to have ratified his act.   Indianapolis Rolling-Mill Co.
v. St. Louis, Ft. S. & W. R. Co., 120 U. S. 256; 7 Sup. Ct.
542.   And when a contract is made by any agent of a corpora-
tion in its behalf, and for a purpose authorized by its charter,
and the corporation received the benefit of the contract, with-
out objection, it may be presumed to have authorized or rati-
fied the contract of its agent," citing many cases.   And to the
same effect is Fitzgerald & Mallory Const. Co. v. Fitzgerald,
137 U. S. 98.

A number of other errors are assigned, but it is not
thought necessary to pass upon each of them, for the reason
that those here considered include the others.   Counsel for
plaintiff in error has cited a great many authorities worthy of
consideration from his point of view, but, in our opinion, they
are inapplicable to the facts as disclosed at the trial and in the
record.   There appearing to be no substantial errors of record,
the judgment of the court below is affirmed, with costs against
garnishee company.

Smith, C. J., and Bantz, J., concur.