## ELLIOTT *v.* HARRIS.

---

MILITARY LAW; MARINE CORPS, ENLISTMENT IN; INFANCY; HABEAS COR-
PUS.

1. Section 1117, U. S. Rev. Stat., U. S. Comp. Stat. 1901, p. 813, providing that no person under 21 years of age shall be enlisted or mustered into the military service of the United States, refers exclusively to enlistment in the army, and does not include naval enlistments.

2. While it is true, as a general proposition, that a father is entitled to the control and dominion of his son until the latter attains the age of 21 years, the age at which an infant shall be competent to do any acts or perform any duties, military or civil, depends wholly upon the legislature and the rule that the legislature may prescribe upon the subject.

3. The marine corps is not an independent organization but is a part of the navy rather than of the army; and U. S. Rev. Stat. §§ 1418, 1419, U. S. Comp. Stat. 1901, p. 1007, which, taken together, authorize the enlistment of minors over 18 years of age to serve in the navy without the consent of their parents or guardians, apply to enlistment in the marine corps as well; so that a minor who has enlisted in the marine corps when over 18 years of age will not be discharged from the custody of the officers of the marine corps in habeas corpus proceedings brought by his father.

No. 1400.   Submitted May 3, 1904.   Decided May 24, 1904.

HEARING on an appeal by the respondents from an order of the Supreme Court of the District of Columbia in a habeas corpus proceeding, discharging a minor from enlistment in the marine corps upon the application of his father.         *Reversed.*

(On February 25, 1904, the appellee moved in this court to affirm the judgment of the court below, or to dismiss the appeal, and a brief was filed by Mr. Lambert and Mr. Baker in support of the motion. The grounds of the motion were: (1) That the record showed there was an issue of fact in the court below which was tried upon evidence admitted by the appellants, and that no exception or objection was taken to the ruling of the court thereon; and (2) that the record failed to set out any point of law that was submitted to the court below for its decision, nor did it show that any exception was taken to the ruling of the court on the facts of the case. A brief in opposition to the motion was filed by Mr. Beach and Mr. Adkins on behalf of the appellants. The motion was denied by the court on March 10, 1904, no opinion being filed.)

The COURT in the opinion stated the case as follows:

This appeal is from an order of the supreme court of the District of Columbia directing a discharge on habeas corpus of Harry F. Harris, an alleged minor, from an enlistment in the marine corps of the United States, upon the application of his father, George F. Harris.

The petition for the writ of habeas corpus was filed on December 9, 1903, and by the petition it is alleged that on or about the 27th day of July, 1903, without the knowledge or consent of the father, Harry F. Harris, the minor son of the petitioner, enlisted in the marine corps of the United States at the marine barracks, in the city of Washington, District of Columbia, and that said Harry F. Harris was, at the time of filing said petition, in the care and custody of the officers of the United States at said barracks; that the petitioner never relinquished his claim and right as father of his said minor son, and is entitled to the legal care and custody of him until he arrives at the age of 21 years,—his then age being about 19 years; that the petitioner, the father, had demanded the release of his son, the said Harry F. Harris, from the custody of the persons who were then detaining him, but that said officers claimed the right to detain him by reason

of the fact that he had enlisted in the marine corps for the period of four years.    The petitioner then avers that his said minor son had no authority to enlist in said marine corps without his consent, and that he had no right to deprive the petitioner of the care and custody of his person, and therefore the petitioner is entitled to have his said minor son released and discharged from said enlistment.

The writ was issued as prayed, and a return made thereto, in which the respondents Brigadier General George F. Elliott, commandant United States marine corps, and Major Randolph Dickins, commanding officer marine barracks, say that they hold the said Harry F. Harris by the authority of the United States as a private in the marine corps; that he enlisted at Washington city, District of Columbia, for the term of four years from the date of said enlistment, and that at the time of his enlistment he, the said Harry F. Harris, did solemnly swear that he was 21 years and 6 months of age; and that, if the allegation in regard to his age made by his father be true, and the enlistment by him was unlawful, he has fraudulently received pay and allowance from the United States, and has committed the crime of fraudulently enlisting and fraudulently receiving pay and allowance, in violation of the provision of the statute in such cases provided.    With the return were filed two exhibits, one showing that on December 10, 1903, charges were preferred against the said Harry F. Harris for swearing that he was, at the date of his enlistment, 21 years and 6 months of age; and the other, showing the affidavit made by said party at the time of his enlistment, stating his age, and declaring his desire to enlist in the marine corps for the term of four years.    And, by the articles of enlistment, it was declared and agreed as follows:

"I, Harry Fred Harris, born in the United States, State of Maryland, county of Montgomery, etc., aged twenty-one years, and by occupation a plunger, do hereby acknowledge to have voluntarily enlisted, this 27th day of July, 1903, as a private in the United States Marine Corps, U. S. Navy, for the period of four years, unless sooner discharged by competent authority," etc.

To the return of the respondents to the writ a replication was

entered, and a stipulation of counsel was filed, whereby it was agreed that the son of the petitioner was, at the time of his enlistment, living at home with his father, and had not been emancipated by him, and that the arrest mentioned in the return did not occur until after the writ of habeas corpus had been served upon the respondents.

On the case thus presented, the court below, by its order of December 22, 1903, discharged the party from the enlistment, and from this order the United States attorney for this District, by the direction of the Secretary of the Navy, and the Attorney General of the United States, prayed an appeal to this court, for and on behalf of the respondents to the writ.

*Mr. Morgan H. Beach,* United States Attorney for the District of Columbia, and *Mr. Jesse C. Adkins,* Assistant, for the appellants.

*Mr. Wilton J. Lambert* and *Mr. D. W. Baker* for the appellee.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The court below, in holding that the petitioner was entitled to the release and discharge of his minor son from the enlistment, seems to have been controlled by § 1117 of the Revised Statutes of the United States (U. S. Comp. Stat. 1901, p. 813), which declares that—

"No person under the age of twenty-one years shall be enlisted or mustered into the military service of the United States without the written consent of his parents or guardians, provided that such minor has such parents or guardians entitled to his custody and control."

This section, however, is taken from the act of Congress of 15th of May, 1872, and is under title "army," and makes no mention of marines any more than it does of sailors, or seamen, or persons enlisted in the navy. It is clear, we think, that this section was intended to have reference alone and exclusively to persons enlisted to serve in the army. The terms *military service*

in their largest sense might and would include naval as well as army enlistments; but it is not contended that naval enlistments were intended to be embraced by these terms. Other provisions of the statutes preclude such construction.

It is somewhat remarkable that we do not find in the statutes relating to the subject a more explicit definition of the marine corps, and its relation to the two great arms of the military establishment of the country, than would seem to exist. But we think the statutes upon the subject, when compared and construed together, leave but little doubt as to how the marine corps is to be classed in the military establishment of the country, and to which arm of the service it properly belongs.

In the case of *United States* v. *Dunn,* 120 U. S. 249, 255, 30 L. ed. 667, 669, 7 Sup. Ct. Rep. 507, it was said by the Supreme Court that, "whatever view may be taken, it [the marine corps] cannot be considered as a distinct military organization, independent of the departments of the army and navy, and under the supervision and control of neither of them, having no superior outside of its own officers, except the President. Such a position is at war with the whole policy of the distribution of power among the executive departments, as we have already shown; and, while it may be true that it is not so exclusively a part of the navy as ships and navy yards are, yet its general supervision and control remain with the navy department."

The marine corps, therefore, is not an independent organization of both army and navy, and must, therefore, in some sense, be a part of one or the other of the two arms of service.

In the case just referred to, of *United States* v. *Dunn,* the Supreme Court said: "The marine corps is a military body designed to perform military services; and, while they are not necessarily performed on board ships, their active service in time of war is chiefly in the navy, and accompanying or aiding naval expeditions. In time of peace they are located in navy yards, mainly, although occasionally they may be used in forts and arsenals belonging more immediately to the army. The statutes of the United States, in prescribing the duties which they may be required to perform, have not been very clear in any expres-

sion which goes to show how far these services are to be rendered under the control of the officers of the navy or of the army. It is clear that they may be ordered to service in either branch; but we are of opinion that, taking all these statutes and the practice of the government together, they are a military body primarily belonging to the navy, and under the control of the head of the naval department, with liability to be ordered to service in connection with the army, and in that case under the command of army officers."

It certainly has been the apparent intention and general understanding of the Congress in the passage of the various acts upon the subject, from the origin of the marine corps to the present time, to so designate the marines as to contradistinguish them from enlisted soldiers in the army, and their classification and association in service have been with the navy, except when specially detailed to act with the army. Without referring to all the statutes upon the subject, we may refer to some of the more recent acts, as showing the intention and understanding of Congress in classifying the marines and making them a part of the navy rather than of the army; and the general and uniform practice of the departments of the government has been in accordance with this apparent distinction and classification as shown in the legislation of Congress.

For instance, by the act of Congress of June 30, 1834, entitled "An Act for the Better Organization of the United States Marine Corps" (4 Stat. at L. 713, chap. 132, § 2, U. S. Comp. Stat. 1901, p. 1099), it is provided—

"That the said corps shall at all times be subject to and under the laws and regulations which are or may hereafter be established for the better government of the navy, except when detached for service with the army by order of the President of the United States." This provision is incorporated in and forms § 1621 of U. S. Rev. Stat. (U. S. Comp. Stat. 1901, p. 1099).

By the act of July 1, 1864, to provide for the efficiency of the navy, it was provided "that any person enlisted in the *military service* of the United States, who shall apply to the navy department to be transferred to the navy or marine corps shall, if his

application be approved by the President be transferred to the navy or marine corps, to serve the residue of his term of enlistment therein, subject to the laws and regulations for the government of the navy." [13 Stat. at L. 342, chap. 201, § 1, U. S. Comp. Stat. 1901, p. 1008.] This provision is embodied in § 1421 of the Revised Statutes of the United States (U. S. Comp. Stat. 1901, p. 1008), relating to the navy.

And by the recent act of Congress of March 3, 1901 (31 Stat. at L. 1099, chap. 850, U. S. Comp. Stat. 1901, p. 1003), it is provided "that any enlisted man of the navy or marine corps, who shall have distinguished himself in battle or displayed extraordinary heroism in the line of his profession, shall, upon the recommendation of his commanding officer, *approved by the flag officer and the Secretary of the Navy,* receive a gratuity and medal of honor as provided for seamen in § 1407, U. S. Rev. Stat. (U. S. Comp. Stat. 1901, p. 1002)." These provisions, together with many others that might be cited, indicate beyond doubt that the marine corps, in the contemplation of Congress, constitutes a constituent part of the naval service of the country, subject to the laws and regulations that govern that arm of the service. And this, we think, has been so held by the Supreme Court of the United States.

In the case of *Wilkes* v. *Dinsman,* 7 How. 89, 12 L. ed. 618, decided in 1849, the question arose under the act of Congress of March 2, 1837 (5 Stat. at L. 153, chap. 21, § 2), and the cause of action originated in the treatment of the plaintiff, who had enlisted as a marine to serve for a certain period, on a naval exploring expedition, and whose time of service expired before the completion of the cruise, and he was detained by the commander and compelled to do service after the expiration of the term of original enlistment. The act of Congress provided that "when the time of service of any person enlisted *for the navy* shall expire while he is on board any of the public vessels of the United States employed on foreign service, it shall be the duty of the commanding officer * * * to send him to the United States in some public or other vessel, unless his detention shall be essential to the public interests, in which case the said officer

may detain him until the vessel in which he shall be serving shall return to the United States," etc.   It was held that this provision of the statute authorized a re-enlistment of marines to serve during the cruise then about to take place,—they being included in the denomination of "persons enlisted for the navy;" and that prior laws recognized marines as a part of the navy.

In that case Dinsman, the plaintiff, was a private in the marine corps under Commodore Wilkes in the exploring expedition, and, his term of service having expired, he entered into a contract for re-enlistment to serve until the return of the vessel.  The act which authorized his re-enlistment applied to seamen and to service of anybody enlisted for the navy.  Dinsman was subject to severe discipline by the orders of Commodore Wilkes, for which he brought the suit in the nature of an action of trespass, and alleged that after the expiration of his service he was *not lawfully re-enlisted* as he was not a seaman when enlisted for the navy, by reason of his being in the marine corps.   The case was very fully argued at bar, and thoroughly considered by the court, and it was held that the plaintiff belonged at the time to the navy, the court, among other things, saying:   "Though marines are not in some senses 'seamen,' and their duties are in some respects different, yet they are, while employed on board public vessels, persons in the naval service, persons subject to the orders. of naval officers, persons under the government of the naval code as to punishment, and persons amenable to the navy department. Their very name of 'marines' indicates the place and nature of their duties generally.  And, besides the analogies of their duties in other countries, their first creation here to serve on board ships expressly declared them to be a part 'of the crews of each of said ships.'   Act of 27 March, 1794, 1 Stat. at L. 350, chap. 12, § 4. Their pay was also to be fixed in the same way as that of the seamen. § 6, p. 351.   So it was again by the act of April 27, 1798, 1 Stat. at L. 552, chap. 31.   And they have ever since been associated with the navy, except when specially detailed by the President for services in the army.   *   *   *   Thus paid, thus serving, and thus governed like and with the navy, it is certainly no forced construction to consider them as embraced in the spirit

of the act of 1837 by the description of persons 'enlisted for the navy.' "

This view was fully adopted and followed in the subsequent case of *United States* v. *Dunn,* decided in 1887, to which we have already referred.

It is argued, however, that notwithstanding that the marine corps may be, in a certain sense, a part of the navy, and controlled by the laws and regulations that apply to that arm of the service, yet the party enlisted in this case, being a minor, and subject to the control and dominion of his father, the latter is entitled to his custody and services until the age of 21 years, and that the enlistment was void without his consent, and consequently the son should be discharged from such enlistment.

That the father is entitled to the control and dominion of his minor son until the latter attains the age of 21 years is certainly true, as a general proposition; but it is equally true that the age at which an infant shall be competent to do any acts or perform any duties, military or civil, depends wholly upon the legislature, and the rule that the legislature may prescribe upon the subject. This proposition we do not understand to be questioned. *United States* v. *Bainbridge,* 1 Mason, 71, Fed. Cas. No. 14,497; *Wassum* v. *Feeney,* 121 Mass. 93, 95, 23 Am. Rep. 258. But the question is, In what particular provision of the statute is the right and power given to a minor, under 21 years, but above 18 years of age, to enlist in the marine corps without the consent of his father? There would seem to be no doubt of the right or power of a minor between the age of 18 and 21 years to enlist in the navy; and if in the navy, why not in the marine corps, a part of the navy?

By § 1419 (U. S. Comp. Stat. 1901, p. 1007), U. S. Rev. Stat., it is declared that minors between the age of 14 and 18 years shall not be enlisted for the naval service without the consent of their parents or guardians. And, by the preceding § 1418 of the U. S. Rev. Stat. (U. S. Comp. Stat. 1901, p. 1007), it is provided that "boys between the ages of 14 and 18 years may be enlisted to serve in the navy until. they shall arrive at the age of 21 years; *other persons* may be enlisted to serve for a

period not exceeding five years" (changed to four years by act of
March 3, 1899, 30 Stat. at L. 1008, chap. 413), "unless sooner
discharged by the direction of the President." By way of con-
struction of these sections of the Revised Statutes, § 289, para-
graph 2, of the regulations for the government of the navy of
1900 declares that "minors over the age of 18 years may be en-
listed without the consent of parents or guardian."

In view of all the legislation upon the subject, it would seem
to be but a fair construction that the words "other persons," as
employed in § 1418 (U. S. Comp. Stat. 1901, p. 1007), just
cited, not only embrace persons enlisted in the navy *eo nomine,*
but also persons enlisted in the marine corps; and this appears
to have been the opinion and decision of the Attorney General of
the United States in *Gormley's Case,* 12 Ops. Atty. Gen. 258,
265.

The present case is not without precedents to warrant the en-
listment in question. In the case of *Re Doyle,* 18
Fed. 369, in the United States district court for the
southern district of New York, the facts were similar
to those in the present case. In that case Doyle had
enlisted in the marine corps at the age of 19 years,
without the consent of his parents, and his father petitioned for
and obtained a writ of habeas corpus and sought the release of
his son. Upon careful examination of the subject by Judge
Brown, district judge United States, he held that the marine
corps was a part of the navy, and that the enlistment was valid,
and, therefore, the party enlisting was not entitled to be dis-
charged upon the application of his father. The judge said:—

"Notwithstanding this intermediate character of the marine
corps, and these several provisions allying it in several respects
with the military service, I am satisfied that it is properly
classed with, and is a part of, the naval service of the United
States. * * * In various acts of Congress making appro-
priations, the marines are frequently referred to as a part of the
naval service, and are sometimes described as 'marines of the
United States.'"

In the argument of this case for the appellee much reliance

was placed upon the case of *Re Shugrue,* reported in 3 Mackey, 325, decided by the supreme court of this District at general term in November, 1883. If that case stood unaffected by other decisions, we should be strongly inclined to follow it as an authority upon the question involved. But the case is in manifest conflict with the principle upon which the subsequent case of *United States* v. *Dunn* was decided by the Supreme Court of the United States. In the *Shugrue Case* the court say—

"For the purposes of this case it may be conceded that §§ 1418 and 1419 of the Rev. Stats. (U. S. Comp. Stat. 1901, p. 1007), taken together, authorize the enlistment of minors over 18 'to serve in the navy' without the consent of their parents or guardians; the question still remains to be considered whether this general provision relating to enlistments 'to serve in the navy' has any application to enlistments into the marine corps."

And the court proceeds to distinguish the case from that of *Wilkes* v. *Dinsman,* and concludes that the marine corps is neither part of the navy nor of the army, but is rather an independent organization, that may be required to serve with either navy or army, as the exigencies of the service may demand. But this proposition does not consist with what was held in *Dunn's Case,* wherein it was declared that, "whatever view may be taken, it cannot be considered as a distinct military organization, independent of the departments of the army and navy, and under the supervision and control of neither of them, having no superior outside of its own officers except the President. Such a position," said the court in this latter case, "is at war with the whole policy of the distribution of power among the executive departments, as we have already shown;" and the court concludes that the general supervision and control of the marine corps remain with the navy department.

We must reverse the order appealed from and remand the cause that the petition for the writ of habeas corpus be dismissed; and this termination of the case will have the effect of relieving the young man of the charge and arrest that have taken place under the act of March 3, 1893.

*Order reversed and cause remanded, in accordance with the foregoing opinion.*

A writ of error to the Supreme Court of the United States was prayed by the appellee, and allowed June 8, 1904.